## Case No. 6,623.

### HOLLOMAN v. LIFE INS. CO.

[1 Woods, 674.] [1]

Circuit Court, S. D. Mississippi. May Term, 1874.

LIFE INSURANCE — CERTIFICATE OF EXAMINING PHYSICIAN AS EVIDENCE—MISREPRESENTATION.

1. The certificate of the examining physician of a life insurance company is evidence of its recitals, and is conclusive unless the opinion of the physician was influenced by fraudulent representations or concealment of material facts.

2. An insurance company is not permitted to prove that the examining physician was incompetent; he was the agent of the insurer and not of the insured.

3. A declaration that the insured had not previously had a severe disease, *held*, not to include the ordinary diseases of the country which yield readily to medical treatment, and do not tend to shorten life.

4. A misrepresentation to avoid the policy must have been in relation to a material fact that would have probably induced the insurer to decline the risk.

5. The insured had, for a period of three months, about three years previous to the contract of insurance, disease of the bowels, having been perfectly healthy during the interval; this fact was not communicated to the insurers; the insured died about three years after the policy was issued, of a disease of an entirely different character: *Held*, that the previous sickness was not material, and the fact that it was not communicated would not avoid the policy.

Submitted to the court on the issues of fact as well as of law.

Adam & Speed, for plaintiff.
Harris & Harris, for defendant.

HILL, District Judge. This is an action of debt, commenced originally by attachment in the circuit court of Warren county, and removed to this court. It is brought to recover the sum of ten thousand dollars, alleged to be due on two policies of insurance, the one issued April 1, 1869, and the other April 1, 1870, for $5,000 each, on the life of Mrs. Rebecca A. Holloman, wife of the plaintiff, and for his use. A jury having been waived, and the questions of fact as well as law having been submitted to the court, they will be considered as presented by the pleadings and proof. There is no question raised as to the issuance of the policies, the payment of the premiums, or the death of Mrs. Holloman, or the liability of the defendant, unless the policies are avoided by reason of the fraud alleged in the pleas, which applies equally to both policies. The pleas all being affirmative, and the allegations therein being denied by the replications, the burden of proving the defense is thrown upon the defendant.

The defense set up by defendant in the pleas is in substance as follows: That the policies were issued upon conditions therein expressed, among which was this, that if any of the declarations made in the application for the policies, and upon the faith of which they were issued, shall be found to be untrue in any respect, said policies shall be deemed and held null and void. That among other declarations so made, it was declared said Rebecca A. Holloman was not consumptive on the days when made, to wit, on the 25th of February, 1869, and the 25th of March, 1870, and had not previous thereto had consumption, or habitual cough, and had not for some years previous thereto had any severe sickness or disease, and was not then, or had not before that time been affected with any disease or disorder; nor had the parents of said Rebecca A. Holloman been afflicted with any scrofulous or other constitutional disease, hereditary in character. That said declarations were untrue in this, that the health of said Rebecca A. Holloman was not good; that she had previously had consumption and habitual cough, and she had within the seven years preceding, and did then have, severe sickness and disease; and was then afflicted with disease of the womb of a severe and dangerous character, by means whereof the life of the said Rebecca was destroyed, and that the father of said Rebecca had scrofula, a disease constitutional and hereditary in its character, and which false and fraudulent declarations were made to deceive and did deceive defendant, and induced the issuance of said policies, whereby they became null and void.

The evidence produced to establish the declarations so made are the answers made by the plaintiff to certain questions propounded to him as the basis of the contract. To the 8th question, "What is the present state of the health of the party?" the answer is, "Good." To the 14th question, "Has the party ever had any of the following diseases?" (among which is consumption) the answer is, "No." To the 19th question, "Has the party had during the last seven years any severe sickness or disease? if so, state the particulars, the name of the attending physician, or who was consulted and prescribed;" the answer is, "No."

The declarations made by this proof, necessary to be considered, are: (1) That Mrs. Holloman was then in good health. (2) That she had not had consumption, cough, scrofula or other hereditary disease. (3) That she had not within the preceding seven years been afflicted with any severe sickness or disease. The first and third only of these declarations need be considered, as there is no proof to show, or tending to show that the remaining statement was untruthfully made.

The first question of fact to be ascertained from the proof is, was Mrs. Holloman in good health at the time these declarations were made? The defendant, to establish the allegation that she was not, has read the depositions of a large number of witnesses embracing the neighbors and acquaintances

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

of the deceased; some of the former servants of the deceased, and the nurse who attended her in her late sickness. I have carefully examined this testimony, and I find that the depositions, with the exception of three or four, fail to show that Mrs. Holloman's health was not good, at the times when the declarations were made and the policies issued. And as to the testimony of those who testify as to her ill health prior to the six months next preceding her death, it is evident they are mistaken as to the time, other than the attack while at Sharon in 1867; three of these witnesses testify that the death occurred in 1872, showing a want of memory which greatly weakens the weight to be given to their testimony. It is proved by Dr. McKie, that at a time when one witness states that the deceased was sick and using disinfectants in April, 1870, she was in fact in good health and at Sharon nursing her sick son. Besides, in addition to this rebutting testimony, a number of her relations and intimate friends testify that she was a healthy woman up to her last sickness, except an occasional attack of such malarious diseases as are common in that neighborhood. The physicians in the vicinity testify the same thing; so that aside from the testimony of Dr. Tuttle, who was the medical examiner for the first policy, and Dr. Jones for the last, the certificates of these physicians to the company upon such examination must be held as competent evidence of the facts certified to, and can only be rebutted by testimony establishing that they were deceived either by false statements or by the suppression of facts, without a knowledge of which such examining physicians could not come to a correct conclusion as to the condition of the party examined, and which could not be discovered by them upon the usual examination. The defendant must be estopped from denying the competency of the physician selected to make the examination, the physician being the agent of the defendant, and not the agent of the plaintiff. These certificates show Mrs. Holloman to have been in good health when these declarations were made; and as to the declarations made for the first policy, the good health of Mrs. Holloman is established by the testimony of Dr. Tuttle, taken upon both the examination of the plaintiff and cross-examination of defendant. The examination made by Dr. Jones on the 25th of March, 1870, for the last policy, states that Mrs. Holloman was then in good health. Dr. Jones was the family physician of plaintiff, as well as the examining physician of defendant, but his deposition could not be taken in consequence of the recent deprivation of his mental faculties. In confirmation of the correctness of his conclusions, Dr. McKie states, that in April (and it must have been at that time or shortly thereafter), the insured was in Sharon nursing her sick son for more than ten days, and was apparently healthy. In view

of all the proof it cannot be otherwise held than that the allegation that Mrs. Holloman's health was not good, at the time these declarations were made, is not sustained by the proof.

The last question of fact to be considered is, had Mrs. Holloman, during the seven years next preceding the time when these declarations were made, been afflicted with any severe sickness or disease? This does not include the ordinary diseases of the country, which yield readily to medical treatment, and when ended leave no permanent injury to the physical system, but refers to those severe attacks which often leave a permanent injury and tend to shorten life. The only proof tending to establish this allegation, not already considered is, that of her sickness while residing at Sharon in 1867. Dr. O'Leary, the physician who attended her, testifies, that soon after she came there he was called to prescribe for her; that her disease was chronic diarrhea or affection of the bowels, and he thinks he prescribed for her for two or more months, when she recovered. He states, that if it lasted only a few weeks it could not be called chronic. The testimony of the eminent medical men, who have been examined, leaves it uncertain as to what may be considered a chronic disease of the bowels, the causes being so various. As already stated, the common understanding of the question, as to whether the party has had, during the seven years, any serious disease, is whether it was such disease as often impairs the constitution and tends to shorten life, and which, if known, would have deterred the insurer from taking the risk without further examination and information. Testing the question propounded and the answer given by this rule, it is evident that had the answer been, that Mrs. Holloman had in 1867 (two years before the first and three years before the last answer) this affection of the bowels which entirely ceased within two or three months, and had not recurred, there would not have been the least hesitancy about taking the risk; such being the case, it must be held, that the last averment is not sustained by the proof.

Insurance companies, like all other parties, are entitled to the benefit of these contracts, and to be relieved from them when procured by misrepresentation and fraud, and are entitled to have their rights declared and enforced in courts of justice as those of individuals; but like individuals, are bound by the acts of their agents, and a knowledge of facts communicated to their agents is full notice to them. The testimony in the case shows, that Mrs. Holloman died of a disease to which females are subject, and more liable to at a certain age than any other. She had resided all her life in a malarious district; all these facts were well known to the agent and physician selected, and instructed by the defendant, and consequently

known to the defendant, who assumed all the risks incident thereto. The consideration upon which the contract is based, on the one side, is the reception of the premiums, and on the other, the payment of the policy when the death shall occur; the amount of premiums being regulated by the probabilities of the duration of life, and consequently of the amount of premiums to be paid. The false statement of facts, or the suppression of facts, to have the effect of forfeiting the claims of the insured and rendering the contract void, must be of so material a character, that if not made on the one hand, or if made on the other, they would probably have induced the insurer to decline the risk, or to materially modify its terms. The questions propounded must be such as can be reasonably comprehended by the answerer.

The same rules must be applied to this contract which are applied to others, to ascertain the mutual understanding of the parties, and when these rules are applied to the evidence in this case, it must be held, that the defenses insisted upon are not sustained, although the agent and counsel of the defendant have certainly bestowed an unusual amount of labor, and displayed great ability in preparing and presenting the defense. The plaintiff is, therefore, entitled to a judgment for the sum of ten thousand dollars, the amount of the two policies, and to the further sum of seven hundred and fifty dollars, interest thereon for one year and three months, making the sum of ten thousand seven hundred and fifty dollars.