WILLIAM J. PENBERTHY, Appellant, v. AMELIA VAHL, Respondent.

Edward M. Fellows and Arvin O. Robb for Appellant.

Harry A. Houser, Rankin, Oneal, Luckhardt, Center & Hall and Maurice J. Rankin for Respondent.

NOURSE, P. J.—Plaintiff, a real estate broker, brought an action for damages in the amount of $6,250 for an alleged breach of contract by defendant of an exclusive right to sell. The cause was tried without a jury, judgment going for defendant, the trial court finding that defendant had not dealt with her property in such a manner as to prevent the performance of the contract or to make performance impossible, and that she was ready, willing and able to transfer the property under the terms of the contract if plaintiff had obtained a purchaser.

The facts of the case are that on February 18, 1947, appellant and respondent entered into a contract in which appellant was given an exclusive right to sell within a period of thirty days certain real property, furniture, fixtures, liquor and liquor license and the business conducted by respondent known as "Vahl's Club." Before the expiration of the thirty days respondent entered into an agreement with Harold B. Graham to lease the property to him for a period of five years on a monthly rental basis. On March 7, 1947, respondent had recorded in the office of the County Recorder of Santa Clara County a notice of intention to transfer the liquor license included in the agreement with Graham and also had recorded a limited partnership certificate between herself as limited partner and Graham as general partner.

Respondent gave testimony to the effect that in contemplation of a six months' trip abroad she had made these agreements with Graham so he could carry on the business during her absence, that arrangements were made with Mr. Graham for him to assign the liquor license and other interests back to her when she returned so she could resume operation, that when the agreements were made there was a definite understanding that should appellant find a buyer for the place she would repossess the property in order to sell. Graham

and respondent's attorney, who was present at the time of the business transactions between Graham and respondent, both gave testimony which supported that of respondent.

Respondent did repossess the property, and had the liquor license transferred to her upon her return from Europe. She testified that at all times the property was available for sale, and that at the time of the trial she was willing to sell should appellant produce a buyer able to comply with the terms.

The trial court found that although appellant had advertised and had devoted some time to trying to sell the property he had not procured a buyer and there is no contention by appellant that he did produce a buyer. Friends of appellant told him that the "Vahl's Tavern" had been sold; he saw the recorded transactions between Graham and respondent in the recorder's office, and without consulting respondent came to the conclusion that the recorded transactions were a breach of the contract between respondent and him making it impossible for him to fulfill his part of the contract. On March 25, 1947, appellant filed his complaint.

Appellant brings this appeal upon the grounds that respondent having entered into agreements with a third party to lease the property, to form a limited partnership ·and to transfer her liquor license, all during the period in which appellant had an exclusive right to sell, it was impossible for him to carry out his part of the contract; that evidence of any oral agreement or understanding which respondent may have had with the third party arranging for the sale of the property should respondent find a buyer was barred by section 1698, Civil Code and the parol evidence rule, section 1856, Code of Civil Procedure, and the trial court erred in allowing evidence of such oral agreement to be introduced to vary the terms of the written agreement, also that such evidence of an oral agreement to cancel the lease and re-transfer the liquor licenses should appellant find a buyer was not legally sufficient on which to base a finding that respondent was able at all times to complete her contract with appellant, that the decision of the trial court is inconsistent and incompatible with and contrary to the facts.

There is no question but that if respondent through her negotiations with Graham had made sale of the property by respondent impossible, appellant was entitled to recovery. *Rucker* v. *Hall*, 105 Cal. 425 [38 P. 962]; *Wright* v. *Vernon*, 81 Cal.App.2d 846 [183 P.2d 908]; *Lowe* v. *Loyd*, 93 Cal.App.

2d 684 [209 P.2d 851]. The questions therefore to be decided are did the court err in permitting evidence of an oral agreement to be introduced for the purpose of showing that sale was possible at all times and was such evidence sufficient upon which to base its findings.

Appellant argues that under section 1698 of the Civil Code, which provides that a contract in writing can be altered only by a contract in writing or an executed oral agreement, the oral agreement between the parties cannot be considered to show the intention of the parties. Appellant likewise invokes the parol evidence rule, section 1856, Code of Civil Procedure which provides: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing. . . ."

Section 1698 comes under the parol evidence rule. "Some attempt has been made to confine the application of section 1698 of the Civil Code to contracts required by law to be in writing. However, it would seem that the section applies to written contracts generally. It lays down the salutary rule in regard to written instruments which forbids the admission of parol evidence to vary their terms." (6 Cal.Jur. § 226, p. 377.) The parol evidence rule as to third parties is stated in 6 California Jurisprudence, section 162, page 251 as follows: "In an action between a party to a contract and a third party the rule that parol evidence cannot be received to contradict or vary a written contract does not apply, as the estoppel on which the rule rests must be mutual, and, since the third person is not bound by the contract as written, neither is his adversary in the action." In *C. L. Glover Co.* v. *Farinacci,* 113 Cal.App. 183, 187 [298 P. 133], a case concerning broker's commissions, it was said: "Since this present controversy is between respondent, who was a party to the exchange agreement, and appellant, who was not such a party, the parol evidence rule does not apply." "In an action between a party to a contract and a third party, the rule that parol evidence cannot be received to contradict or vary a written contract does not apply, as the estoppel on which the rule rests must be mutual, and, since the third person is not bound by the contract as written, neither is his adversary in the action." (*Carlson* v. *Industrial Acc. Com.,* 213 Cal. 287, 290 [2 P.2d 151].) "Where the controversy is between a party to a written contract and one who is neither a party nor a

privy to one who is, the rule excluding parol evidence to explain, vary, modify or contradict the writing does not apply.'' (*Gammon* v. *Ealey & Thompson*, 97 Cal.App. 452, 458 [275 P. 1005].)

█ The real question here is whether the evidence supports the court's finding that ''[I]t is not true that Defendant sold, disposed of or dealt with said property in such manner as to prevent the performance of said contract by Plaintiff or make such performance impossible, and at all times Defendant was the owner of said property and was ready, willing and able to transfer the same upon the terms stated in said agreement if Plaintiff had obtained a purchaser who was ready, willing and able to buy the same, and said property was at all times available for sale to any such purchaser.''

An examination of the record discloses substantial evidence that the property was at all times available for sale and the respondent able to transfer it upon the terms stated in the agreement with appellant.

Graham on the witness stand was asked: ''Q. Do you recall at the time this agreement was signed, do you recall making or executing assignments in blank giving this place back to Amelia [Mrs. Vahl]? A. I do. Q. Explain to the Court what was done? A. At the time the agreement was made we worked out our original arrangements. Mrs. Vahl said she had an agreement with a real estate man to sell the property. I signed documents to that effect, the property should be returned to her at any time the deal was made.'' And again, ''Mr. Graham, . . . You ran the cafe during the time the Vahls were in Europe for six months? A. Yes. Q. When she came back she took over again? A. That is right. Q. During all the time you were there was there ever anybody brought to the place that you know of by Mr. Penberthy as a prospective buyer of the property? A. Never anybody brought there by anybody. I never saw Mr. Penberthy before in my life. Q. During all the time you were there if there had been a buyer you would have been agreeable to selling at that price, you and Mrs. Vahl had that arrangement? A. That is right.'' Mr. Graham was also asked: ''Mr. Graham, at the time of those signatures you signed some papers, do you not recall assignments in blank? A. Yes. Q. Also an assignment just about of two lines, in the event sale was made this deal would have no effect, you remember? A. Right.''

Mrs. Vahl's attorney testified: ''I had Mr. Graham sign these [assignments of the liquor license] in blank transferring

these licenses back from Mr. Graham, back to Amelia Vahl. I kept possession of the assignments in my file so we could immediately take repossession and make any sale at the same time under the drafts and rough piece of paper there, just a statement: 'If sale is made this agreement to be of no effect, parties to remain in status quo.' I placed it in my file at the time. Well, when Mrs. Vahl came back there was no necessity. of any assignments whatsoever, she retook possession of the property. I took the original assignments, filed with the Board of Equalization. Mr. Graham didn't sign anything at all. This property was available for sale.''

The following testimony was given by Mrs. Vahl: ''Q. Mrs. Vahl, at all times after February 18th, 1947, were you ready and willing to sell the property? A. Yes. Q. According to the terms of this contract? A. That is right, that was the understanding. Q. Have you been so ever since? A. Yes. Q. You still are? A. Yes. Q. Did you send word through your attorney, Mr. Houser? A. I told Mr. Houser and Mr. Graham both, when dealing with this transaction I told him about this deal, and he never has brought anybody out there.'' She further testified that she assigned the liquor license to Mr. Graham, which was without any consideration or compensation from Graham, in order that he could operate the place while she was in Europe for six months. Respondent also testified that she would never have signed the contract with appellant if he had not assured her he had a buyer and told her she would have to sign a contract before he would produce the buyer but that at no time did he produce a buyer for her property.

There was substantial evidence produced to support the findings and judgment of the trial court. From the whole record it appears that appellant made no effort whatever to produce a buyer; that he induced respondent to sign the agency contract for the purpose of effecting a trade of the property for property of one of his clients; that this respondent refused to do and thereupon appellant led her to believe that he was making no further effort to find a purchaser. It is manifest that he was not damaged by the alleged breach and that he has shown no cause justifying an award of damages.

Judgment affirmed.

Dooling, J., concurred.

A petition for a rehearing was denied January 6, 1951.