PERRY *v.* JOHN HANCOCK MUTUAL LIFE-INSURANCE CO.

1. LIFE INSURANCE—HEALTH OF ASSURED—EVIDENCE

In an action on a life-insurance policy, a motion for a directed verdict, on the ground that assured was not in good health as warranted at the time the policy was issued, *held*, properly denied, in view of the report of the examining physician, and the testimony of assured's relatives as to the work done and recreation indulged by her at that time.

2. SAME—ADMISSIBILITY OF EVIDENCE.

The report of the examining physician is competent evidence upon the issue of whether the answers of the assured in an application for a policy of life insurance were true.

3. WITNESSES—PHYSICIANS—PRIVILEGE.

In an action on a life-insurance policy, physicians cannot disclose any information which they acquired in attending upon assured as a patient.

4. INSURANCE—APPLICATION—CONSTRUCTION.

Questions and answers in an application for insurance ought to be liberally construed in favor of the insured.

5. SAME—OCCUPATION—QUESTION FOR JURY.

Whether the keeper of a house of prostitution is a housewife, as stated in her application for a policy of life insurance, *held*, a question for the jury.

6. SAME.

There being no attempt to dispute defendant's proofs that insured was keeping a house of prostitution, it was error to submit the question whether she was keeping such a house to the jury.

7. SAME—WARRANTY—BREACH—WAIVER.

Where, in an action on a life-insurance policy, defended on the ground that assured misstated her occupation in the application, it appears that her house was conspicuously a house of ill fame, that defendant's agent solicited the application at her house, and there is evidence that defendant's manager collected premiums there, the question whether defendant has not waived the breach of warranty that her occupation was that of housewife should be submitted to the jury.

Error to Wayne; Donovan, J.   Submitted January 5, 1906.   (Docket No. 16.)   Decided March 5, 1906.

Assumpsit by Lucinda Perry against the John Hancock Mutual Life-Insurance Company on a policy of insurance. There was judgment for plaintiff, and defendant brings error.   Reversed.

*Van Zile & Brownson*, for appellant.

*Washington I. Robinson*, for appellee.

BLAIR, J.   August 25, 1903, Annie Voakes made application to defendant's agent for life insurance, and on the 29th day of August, 1903, she made the representations shown in the application, a copy of which was attached to the policy.   September 23, 1903, the policy was issued by the defendant company at its home office in Boston, and in due course was delivered to the insured. December 8, 1903, 2 months and 15 days after the policy was executed, the insured died—"primary cause of death, heart disease; secondary cause of death, dropsy."   The statements in the application were, by the terms of the policy, made warranties.   In the application is the following.

"If any statement, or answer in the application for this policy, which application is hereby referred to and made a part hereof, is in any respect untrue,  *  *  *   then this policy shall be void.  *  *  *

"I declare and warrant that the representations and answers made herein are complete, strictly correct, and true; that the several questions were duly asked, and that the answers given by me are duly recorded as above; that they shall form the basis and become part of the contract of insurance; that any false or untrue answer shall render the policy null and void; and that said policy shall not be binding upon the company unless at noon upon its date I shall be alive and in good and sound health."

Among the questions asked applicant and answered by her, as shown by the application, are the following:

"(4) *Q.* Present occupation?

"*A.* Housewife.

"(5) *Q.* What other occupation have you been engaged in during the past two years?

"*A.* None.

"(6) *Q.* Are you now in good health?

"*A.* Yes.   *   *   *

"(8) *Q.* When did you last consult a doctor, and for what?

"*A.* Three months ago; pneumonia, recovered.   *   *   *

"(15) *Q.* Are you now or have you ever been affected with any of the following diseases? Answer 'Yes' or 'No' to each:   *   *   *   Disease of the heart?

"*A.* No.   *   *   *

"(18) *Q.* Have you ever had any sickness or injury whatever not already named, or undergone any surgical operation?

"*A.* No."

The proofs, undisputed, show that assured, about six years before she was insured, was a married woman and lived with her husband; that his name was John Voakes; that James Vokes, a brother of her husband, was a married man and lived just across the road with his wife; that Anna Voakes, the assured, separated from her husband, and about the same time James Voakes separated from his wife, and James and the assured, Anna Voakes, commenced to live in the same house; that ever since and up to the time of her death Annie Voakes lived with James Voakes and kept house for him, living about from place to place; that in 1903, and for some time prior to and after the application for insurance, Annie Voakes, under the assumed name of Annie Miller, lived at 105 Franklin street and 28 Beaubien street, in the city of Detroit, both houses of ill fame; that, while living here, she was examined as required by the health board of the city of Detroit and received certificates showing that she was free from venereal diseases; that, as testified to by two of the police force who knew her by her true name and her assumed name, she was a prostitute, so known and recognized by the health board and the police of the city, and that her busi-

ness was that of a prostitute, in charge of a house of ill fame.

Proofs of loss were filed by plaintiff, made upon blanks furnished by the company, which were forwarded to the company at its home office in Boston, Mass. The company declined to pay, for the reason stated by the superintendent, as plaintiff claims, that her daughter had been insured too short a time. Plaintiff brought suit, and recovered on the policy in justice's court and upon appeal in the circuit court. Defendant brings the case to this court upon writ of error.

Error is assigned upon the refusal of the court to direct a verdict in favor of defendant because the answers of the insured to the foregoing questions were untrue, and therefore constituted breaches of her warranties, which avoided the policy. It is contended that the proofs show conclusively that insured was not in good health, but had heart disease at the time she signed the application, and that she was not a housewife, but was by occupation a common prostitute. We think the court did not err in submitting to the jury the question whether the insured's answers were true as to her health. The report of the examining physician was competent evidence upon this subject, and, if accepted by the jury, fully made out plaintiff's case as to this point. *Rhode* v. *Insurance Co.*, 129 Mich. 112, 132 Mich. 503. The report of the examining physician was strongly supported by the testimony of the mother and sisters of the insured and others as to her apparent health and vigor, the work she did, her dancing till 2 o'clock in the morning, and other conduct and actions inconsistent with the presence of chronic valvular disease of the heart.

The testimony of the physicians who treated insured was not, on the whole, of a character to inspire confidence. Two of them had made certificates of death to accompany proofs of loss in which they stated under oath that the duration of deceased's disease was about three months. Although the blank upon which the certificates were made

contained a notice that a false statement would constitute perjury, one of these physicians testified that he made a false statement as to the duration of her disease, because "I knew she was insured and I tried to help her out." It is not surprising that the jury was not convinced by the testimony of such a witness. So far as these physicians disclosed any information which they acquired in attending upon the insured as a patient, their testimony was clearly incompetent, although no objection seems to have been made upon this ground. *Dick* v. *International Congress*, 138 Mich. 372; *Briesenmeister* v. *Supreme Lodge K. of P.*, 81 Mich. 525. Questions and answers in an application for insurance ought to be construed liberally in favor of the insured. *Brown* v. *Insurance Co.*, 65 Mich. 306, 313. So construing the application, we think it was a question for the jury whether the insured was a housewife. The definition of housewife in the Century Dictionary is given as follows:

" The mistress of a family; the wife of a householder; a female manager of domestic affairs."

The same definition is given in Webster's Unabridged Dictionary. The Standard Dictionary defines the word as follows:

" The mistress of a household; a wife or woman who manages domestic affairs; housekeeper."

The insured went further, however, and stated that she had been engaged in no other occupation during the past two years.

We think it clearly appears from the testimony that the insured was keeping a house of ill fame, and that the court erred in submitting this question as an open question to the jury. There was no attempt to dispute the defendant's proofs on this point, which were put in advance of plaintiff's main case. It is inconceivable that the members of the family of the deceased should have taken the stand, and not one of them have denied such serious charges against her, if they were

untrue.   We do not think, however, that this conclusion
ends the case.   The defendant, through its agent, solicited
this application.   Mrs. Voakes did not go to them.   They
went to her and induced her to sign the application at this
very house.   After the policy had been issued by the com-
pany, its Michigan superintendent, according to the testi-
mony of two witnesses, called at the house to collect the
premium.   He denies this; but it was for the jury to say
where the truth lay.   Police Sergeant Rutledge testified
that the house was conspicuously a house of ill fame, and
we think this record presents a fair question for the jury
whether the defendant's agent and superintendent were
not aware of the character of the house and the nature
of the business conducted there when they accepted the
application and the premiums.   If the jury should so find,
the company could not rely upon a breach of warranty in
this respect.

We also think that the court erred in charging the jury,
in substance, that if deceased made the answers in good
faith, believing them to be true, their verdict should be
for the plaintiff.   Good faith would not save the policy
in this case.   Unless the warranties were substantially
true or their truth waived, the policy was void.

The judgment is reversed, and a new trial granted.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ.,
concurred.