[Civ. No. 3677.   Third Appellate District.—March 11, 1929.]

EARLE T. GAMMON et al., Respondents, v. EALEY and THOMPSON, Appellants.

Hawkins & Hawkins and J. M. Walthall for Appellants.

George A. Work and Nathan B. McVay for Respondents.

JAMISON, J., *pro tem.*—This is an action for damages arising from an exchange of real estate, respondents claiming that appellants were their agents in the transaction, and had made false representations to them to induce them to make the exchange. The facts are as follows:

Respondents were the owners of about sixty-six acres of land, located near Modesto, upon which there was a deed of trust for $22,000. Appellants are real estate brokers, having their office at Modesto. E. A. Gammon is the father of respondents, and as their agent and attorney-in-fact, acted for them in the exchange of said property. In July, 1924, said Gammon called on appellants at their office in Modesto and requested their aid in selling or exchanging said land. Appellants thereupon undertook to sell or exchange said land and after several efforts to effect an exchange they notified him that they had a chance to make an exchange, and on March 6, 1925, said Gammon called on appellants in response to said notice. Appellants then informed Gammon that they had an opportunity of exchanging respondents' land for a tract of land of 110 acres owned by one Connetto, upon which there was an encumbrance of $3,500. This Connetto land was located about nine miles from Modesto.

Gammon testified that appellant Ealey took him to the land, but that he made no particular examination of it further than to get a general idea of its location; that while he had theretofore engaged in farming, he knew nothing about the character of the land or soil in the neighborhood of the Connetto land; that the Connetto land had been recently plowed. He also gave testimony that his eyesight was not good, that upon this visit to the land he saw something he thought might be alkali, but that Ealey informed him that what he saw was gypsum, that Ealey represented to him that the Connetto land contained only a small amount of alkali, but not enough to injure or damage crops growing thereon, that gyp corn and black-eyed beans would be good crops to plant on the Connetto land, and that these crops did well on land in that vicinity, similar land producing seventeen sacks of beans to the acre; that appellants could within a reasonable time sell ten acres of the said Connetto land for $400 per acre and the remaining one hundred acres for $250 per acre. Gammon testified that he was on the Connetto land only twenty or thirty minutes, that he made no examination of it for the reason that he knew nothing about land in that locality and because he placed confidence in Ealey, and believed in and relied upon the said representations of Ealey.

None of the respondents had anything to do with the exchange, nor were any of them ever on the Connetto land until after the exchange. Respondents produced evidence to the effect that in the spring of 1925 they rented the Connetto land to experienced farmers, who had farmed lands in the vicinity of the Connetto lands; that these tenants planted some twenty acres in gyp corn and that these twenty acres produced only twenty-nine sacks; that they planted some twenty acres in beans and produced therefrom only some sixty sacks; that the failure of the Connetto land to produce profitable crops was owing to the presence of excessive quantities of alkali.

Various witnesses produced by the respondents placed the value of the Connetto land at from $10 to $30 per acre. Dr. Walter Techow, an expert chemist specializing in soil analysis, testified that he went on the Connetto land in February, 1927, and took samples from thirty borings he made on said land; that the analysis of the borings showed excessive amounts of both the white and black alkali; that in his opinion, it would not be practicable to eradicate the alkali. The process of eradicating the black alkali would be too expensive. He further testified that black alkali is difficult to detect in recently plowed ground, that it caused recently plowed ground to have the appearance of rich soil. It appears without contradiction that the Connetto land is valuable only for agricultural purposes. Appellants produced a number of witnesses whose testimony directly and positively conflicted with that of respondents upon all material matters, except upon the question of agency.

This case was tried by a jury. It returned a verdict in favor of respondents for $5,000. Appellants filed a motion for a new trial, which was denied by the court. This appeal is from the judgment.

■■ The first point urged by appellants for a reversal is that the court should not have granted respondents a jury trial. It appears that four days before the day set for the trial of this case, appellants filed a motion to dismiss the jury upon the ground that respondents had not, within five days after demanding a jury, paid the jury fees in accordance with the rules of the court. The motion was never passed upon by the court. When the case was called for trial, the court stated that it would be tried by a jury. No rules of the court are contained in the record. This court

does not take judicial notice of the rules of the superior court. (*Sweeney* v. *Stanford,* 60 Cal. 363.) This alleged error of the court is without merit, as is also the second point relied upon by appellants, that the amendment to the complaint, at the beginning of the trial, added new causes of action.

The original complaint alleged that appellants falsely and fraudulently represented that the Connetto land was excellent for the purpose of raising crops, when, in truth, it was unsuitable for raising any crops whatever. The amendment was simply an amplification of the foregoing allegation, setting forth that among the crops raised by appellants were gyp corn and black-eyed beans, and that appellants represented to said Gammon that the said Connetto land would produce seventeen sacks of beans per acre. This amendment did not change the cause of action.

When Gammon and Ealey returned to appellants' office from the Connetto land, they found Connetto there and, after some discussion, they entered into an agreement for the exchange of the lands of respondents and Connetto. The following clause appeared in said agreement:

"Each party hereto has examined and investigated the property of the other party for himself or herself, and neither party relies·upon any representation made by said agent or other representation not contained therein."

There is another clause therein which, in substance, is to the effect that said Ealey and Thompson are the mutual agents of both parties in said exchange of lands, each party to pay the commission due said agent without reference to the other party, that this provision is inserted expressly for the benefit of the said agent. This agreement was drawn up in the office of appellants and was signed by Connetto and Gammon immediately after it was prepared. Appellant Thompson testified that it was· dictated by himself and Ealey after the parties had reached an agreement. Appellants offered the contract in evidence, respondents objected to its introduction, and thereupon the court said that it was of the opinion that the first paragraph hereinbefore quoted might be introduced for the purposes of impeachment. It appears that thereafter the said agreement became a part of the record and was made an exhibit for the defendant.

Appellants contend that their objection to any evidence that would vary or contradict the terms of this contract should have been sustained, that no evidence in contradiction to said contract should have been received to the effect that said Gammon had not examined or investigated the Connetto land for himself, or that in making the exchange he relied upon the representations of appellants. The trial court committed no error in admitting this evidence. ■ In the case of *Greve* v. *Echo Oil Co.*, 8 Cal. App. 275 [96 Pac. 904], the court said: "Where the controversy is between a party to a written contract and one who is neither a party nor a privy to one who is, the rule excluding parol evidence to explain, vary, modify or contradict the writing does not apply. In such case neither the party nor the stranger to the contract is bound by the rule excluding parol evidence." (*Smith* v. *Moynihan*, 44 Cal. 53; *Hussman* v. *Wilke*, 50 Cal. 250; 1 Greenleaf on Evidence, sec. 279.)

■ The next point claimed by appellants for reversal is that respondents failed to prove any material misrepresentations were made by them. We see no merit in this point. E. A. Gammon testified that Ealey told them that the Connetto land was adapted to agricultural purposes, that similar land in the vicinity was producing good crops of gyp corn and seventeen sacks of beans to the acre, that the Connetto land contained only a small quantity of alkali, not enough to injure crops growing thereon and that within a reasonable time he could sell ten acres of the land for $400 per acre and the remaining one hundred acres for $250 per acre. Respondents produced witnesses who testified that the land would produce crops of gyp corn and beans in only negligible quantities, that the land contained excessive quantities of alkali that rendered it unfit for agricultural purposes. Several witnesses testified that a large part of said Connetto land was worthless. Others testified that the market value of the land would not exceed from $10 to $30 per acre.

■ There is no contradiction in the evidence of the proof produced on the part of respondents that appellants were the agents of respondents in the exchange. That being the case, the law imposes upon the agent the highest good faith toward his principal. (*Barrios* v. *Foley*, 83 Cal. App. 105 [256 Pac. 573]; *Langford* v. *Thomas*, 200 Cal. 192 [252 Pac. 602].) The relation of principal and agent is fiduciary in

character. (*Williams* v. *Lockwood*, 175 Cal. 598 [166 Pac. 587].)  ▮  The mere expressions of opinion honestly made are not actionable, but a false statement of an opinion, or a false opinion expressed to one entitled to rely upon it may form the basis of an action for deceit. (*Phelps* v. *Grady*, 168 Cal. 73 [141 Pac. 926].)  ▮  The representation alleged to have been made by E'aley that the Connetto land had only a small amount of alkali, not enough to injure or damage growing crops, was a statement of a fact upon which Gammon had a right to rely, Gammon being a stranger to the land and by reason of his reliance upon the representations of Ealey making no investigation of the land himself. (*Palladine* v. *Imperial Valley Assn.*, 65 Cal. App. 727 [225 Pac. 291].)  ▮  A statement as to the value of property is not always made as a mere expression of opinion upon which the other party has no right to rely. (*Crandall* v. *Parks*, 152 Cal. 772 [93 Pac. 1018] ; Pomeroy's Equity Jurisprudence, sec. 878; *Dicky* v. *Dunn*, 80 Cal. App. 724 [252 Pac. 770].)  In the case last cited the court said: "A statement as to value is not always a mere expression of opinion. It may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded as such by the party to whom it is made; and when it is such it is like any other representation of fact and may be a fraudulent representation warranting rescission."  ▮  Where there is a doubt whether or not such representations were intended and understood as expressions of opinion the question for determination is for the court or jury. (*Stockton* v. *Hind*, 57 Cal. App. 131 [196 Pac. 122] ; *French* v. *Freeman*, 191 Cal. 579 [217 Pac. 515].)

▮  Appellants contend that no proof was offered showing that the alleged misrepresentations were known, or should have been known to appellants to be untrue. This contention cannot be upheld. There is ample evidence establishing the fact that both of the appellants knew that the Connetto land contained alkali in quantities, that both had visited the Connetto land before the exchange and knew it was spotted with alkali.

Ealey, on cross-examination, testified that plenty of these alkali spots could be seen, that a week previous to the trial he drove over the Connetto land and saw plenty of alkali spots and that in this respect it was in the same condition

as it was when he took Gammon to the land preceding the exchange, that in December, 1924, he went on the land for the purpose of negotiating a trade between Weatherby, who was then the owner of the land, and Connetto, that at that time the land was in the same condition it was when traded to respondents, that on another occasion he and Thompson visited the land with a Mr. and Mrs. Craycroft, from whom he secured a loan for Connetto.

It thus appears from the evidence that Ealey was familiar with the Connetto land, that he had been over it and examined it on the occasions before he took Gammon to the land preceding the exchange, that he knew there was considerable quantity of alkali in the land, that he saw many alkali spots all over the land. Ealey further testified that he had been a real estate broker at Stockton, some nine miles from the Connetto land, for ten years, that he frequently appraised the value of lands in that vicinity. Upon this evidence, we are of the opinion that the question of whether or not appellants knew, or should have known, at the time said alleged representations were made, that they were or were not true, was a question for the jury.

Even if appellants did not know that the Connetto land contained alkali in such excessive quantities as to render the land unfit for agricultural purposes, yet, if they represented to Gammon that the Connetto land contained alkali in such small quantities that the same would not injure or damage crops growing thereon, when, in fact, the alkali existed in such excessive quantities as to render the land unfit for the growing of crops thereon, such representations would have constituted fraud. (Subd. 2, sec. 1572, Civ. Code; *McMahon et al.* v. *Grimes et al.*, 206 Cal. 526 [275 Pac. 440].)

Appellants complain of that part of instruction No. 2 given by the court wherein it is stated that it is admitted that at the time the exchange was made defendants were acting as agents for the respondents. In their answer appellants deny that they were respondents' agents in making the exchange of said property.

Respondents' testimony was that through their attorney-in-fact, E. A. Gammon, they arranged with appellants to exchange their said land, that on two occasions appellants notified Gammon that they had prospective opportunities to

make the exchange, but these failed of consummation, that the commission for making the exchange to be paid appellants was the sum of $1,000, that payment of this commission was arranged by giving appellants a mortgage for that amount on the Connetto land after the exchange took place. In the agreement between respondents and Connetto that was prepared in appellants' office, and which was dictated by appellants, it was stated that they were respondents' agents. Said Gammon testified that appellants were respondents' agents in the said exchange. Each of the appellants testified in the trial of this action, but neither in any manner denied the said agency. While strictly speaking there was no direct admission of the agency, there was no attempt made by appellants to deny its existence. We are of the opinion that this error in the instruction, if it can be termed such, did not seriously affect the substantial rights of appellants, nor did the use of the word "trifle" as used in instruction No. 7 constitute error.

In this last-named instruction the court told the jury that if appellant Ealey, while the agent of respondents, knew of alkali in the soil of the Connetto land in substantial and detrimental quantities and thereafter while such agent told Gammon that there was some alkali in the land, but spoke of it as a mere trifle, in a manner calculated to quiet apprehension and prevent further investigation or inquiry, and that said Ealey knew of its existence there in substantial and detrimental quantities, and that neither respondents nor E. A. Gammon so knew, then the conduct of said Ealey was wrongful.

E. A. Gammon testified that Ealey said to him that there might be a small amount of alkali in the Connetto land, but not enough to injure or damage crops growing thereon. According to Webster, a trifle means a little and a little means small, therefore it is apparent that the jury could not have been confused by the use of the word "trifle" instead of small.

There is a sharp and decided conflict in the evidence except upon the question of the appellants representing respondents as their agents in the exchange. We have not attempted to detail the conflicting evidence produced by appellants for the reason that the evidence produced by respondents furnishes substantial support for the verdict of

462

the jury, and this court, under these conditions, is bound by that verdict.

We are of the opinion that Gammon, as the agent of respondents, in making the said exchange, relied entirely, as to the character of the Connetto land and its soil, upon the representations of appellants, neither he nor respondents were familiar with the said land, nor had any knowledge that it contained alkali in detrimental quantities, nor does the fact that Gammon visited the land preclude him from saying he relied upon appellants' representations. (*Palladine* v. *Imperial Valley Assn.*, *supra; French* v. *Freeman*, *supra*.)

We find no errors in the record that require a reversal of this case, and the judgment is therefore affirmed.

Plummer, J., and Finch, P. J., concurred.