[No. 35168.   *En Banc.*   October 20, 1960.]

MARTHA C. LILJEBLOM, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 356 P. (2d) 307.

*The Attorney General* and *John F. Wilson, Assistant,* for appellant.

*Gordon, Goodwin, Sager, Hicks & Thomas,* for respondent.

OTT, J.—April 10, 1955, Joel A. Liljeblom filed a report of accident with the Department of Labor and Industries,

alleging that he had sustained an industrial injury March 2, 1955. June 28, 1955, at the request of the department, Liljeblom was examined by Drs. Ralph H. Huff and John F. Steele. August 4, 1955, the doctors' report, containing the case history furnished by the claimant, the substantive findings of the doctors resulting from their examination, and their conclusions as to the cause of the injury, was filed with the department. August 23, 1955, at the request of the department, another examination of Mr. Liljeblom was conducted by Drs. C. E. Watts and K. M. Soderstrom, of Seattle.

October 11, 1955, the supervisor entered an order rejecting the claim for the reason that claimant had not suffered an industrial injury. December 9, 1955, Liljeblom appealed to the Board of Industrial Insurance Appeals. At the hearing before the board, the witnesses on behalf of the claimant were Joel A. Liljeblom, Martha C. Liljeblom, Dr. F. W. Hennings, and Dr. John F. Steele. The department's witnesses were Drs. Huff, C. E. Watts, and K. M. Soderstrom.

Joel A. Liljeblom died November 4, 1956, before the board had entered its final order on the merits of his claim. March 25, 1957, the board entered an order dismissing the appeal of Joel A. Liljeblom, without prejudice to his widow's right to file her claim under the Workmen's Compensation Act.

Martha C. Liljeblom thereafter filed with the supervisor her claim for a widow's pension. May 14, 1957, the supervisor rejected the claim for the reason that decedent's death was due to a heart involvement which was not the result of an industrial injury, as defined by the Workmen's Compensation Act.

Mrs. Liljeblom appealed to the Board of Industrial Insurance Appeals. At the hearing, the petitioner presented her own testimony, the testimony her husband had given at the hearing before the board during his lifetime, and the testimony of Dr. F. W. Hennings. Dr. Steele was not called as a witness, nor was his former testimony offered. The department presented the three medical witnesses who

had testified in its behalf at the former board hearing. The board thereafter entered an order denying the claim and sustaining the supervisor's order of May 14, 1957.

Martha C. Liljeblom's appeal to the superior court resulted in a jury verdict awarding her a widow's pension. A motion for a new trial was denied and, from the judgment entered upon the verdict, the department has appealed.

Upon appeal, the department contends that the court committed prejudicial error meriting a new trial, when exhibit No. 1 (the report of the June 28, 1955, examination by Drs. Huff and Steele) was admitted into evidence.

The record discloses that, while Dr. Huff was being interrogated on cross-examination before the board, he was asked if Dr. Steele had examined the decedent at the same time and arrived at a different conclusion. The department's objection as to hearsay and materiality was overruled. Dr. Huff then admitted that Dr. Steele's opinion was in conflict with his. Mrs. Liljeblom then offered into evidence at the board hearing exhibit No. 1, containing the conflicting conclusions of the doctors following their examination of the decedent on June 28, 1955. The department objected to the admission of the offered exhibit. The proceedings before the board in this regard were as follows:

"Mr. Hicks: I'll offer in evidence the original of Dr. Huff's report for June 28. Mr. Staley: Will you mark this. (Medical Report of June 28, 1955 Marked As Exhibit #1 for Identification) Mr. Staley: Do you have any objections to it, Mr. Robinson? Mr. Robinson: Yes, of course, it is hearsay as to what Dr. Steele's opinion was. Mr. Staley: I would only admit the exhibit if Mr. Hicks would agree to physically obliterate the portions of the medical report with Dr. Steele's name at the top, the statement under conclusion, 'There is a difference of opinion between us as to causal relationship.', and the last paragraph stating: 'It is the opinion of Dr. Steele . . .' and going on from there down to Dr. Steele's signature at the bottom. If Mr. Hicks would consent to that I would admit the rest of the medical report. Mr. Hicks: I'd rather have

it denied on that basis. . . . MR. STALEY: Exhibit 1 is rejected. (WHEREUPON EXHIBIT 1 FOR IDENTIFICATION REJECTED)."

The case was tried before the jury on the departmental record. While Dr. Huff's testimony was being read, respondent renewed her offer of exhibit No. 1 in evidence. The objection to its admissibility was overruled, and the exhibit was admitted.

Exhibit No. 1 stated the opinions of Drs. Huff and Steele as follows:

"There is definite clinical evidence that the claimant has had a coronary occlusion with myocardial infarction. There is a difference of opinion between us as to causal relationship.

"It is the opinion of Dr. Huff that the exertion in the course of the claimant's employment did not subject the heart to any unusual strain and there was not a direct relationship of the claimant's heart condition to the exertion and injury alleged. The claimant repeatedly stated that he had similarly exerted himself on numerous occasions within the past few months without any apparent distress.

"It is the opinion of Dr. Steele that the claimant was so anxious to prove that he had never had any heart trouble that he kept answering questions without really considering what he was saying. For instance, Dr. Huff asked him if he had frequently put a picaroon into a 600 lb. timber and had the picaroon slip out and allow him to fall like he did this time and he said 'Yes, many times'. He has been doing the same work for years and now about the same amount of exertion seemed to precipitate the attack. Dr. Steele believes the claimant needs further treatment and observation. He is totally disabled at present and it is difficult to say when he can return to work."

The exhibit was considered by the jury during their deliberations in the jury room. As indicated above, Dr. Steele was not a witness at the board hearing on Mrs. Liljeblom's claim for a widow's pension. The exhibit was offered by respondent either for the purpose of impeaching the testimony of Dr. Huff or, through the medium of a departmental record, to establish evidence of causation favorable

to respondent and corroborative of the testimony of Dr. Hennings. The exhibit was not admissible for either purpose.

There was no discrepancy between Dr. Huff's testimony and the written report of his findings which he made to the department during the decedent's lifetime. The report shows that two examining doctors differed in their conclusions as to the cause of decedent's injury. This fact does not make the exhibit admissible for impeachment purposes, because impeachment of a doctor is not accomplished by showing that another doctor, examining the same patient, arrived at an opposite conclusion.

From the quoted portion of the discussion and ruling upon the admissibility of the exhibit at the board hearing, it is apparent that respondent was there contending that the exhibit was admissible for impeachment purposes. The exhibit did not impeach the testimony of Dr. Huff for the reasons above stated, and was not admissible for that purpose.

On appeal, respondent contends that the report containing Dr. Steele's conclusions was admissible under RCW 5.45.020 as a business record. Assuming, without deciding, that the report does constitute a business record, such a record is not admissible in evidence simply because it is a business record. The Uniform Business Records Act provides for the admissibility of "A record of an act, condition or event . . . " RCW 5.45.020, *supra*. Exhibit No. 1 contains the conclusions of the doctors, and it was for that segment of the report that respondent was urging its admission into evidence. Business records are not admissible for the purpose of proving the conclusions there recorded. In *Young v. Liddington,* 50 Wn. (2d) 78, 83, 309 P. (2d) 761 (1957), we said that the exception to the hearsay rule created by the Uniform Business Records Act "was not adopted to permit evidence of the recorder's opinion, upon which other persons qualified to make the same record might have differed."

Respondent further contends that because Drs. Watts and Soderstrom (the Seattle doctors) considered

exhibit No. 1 before they made their examination, it was properly admitted into evidence. The Seattle doctors testified that, while they had a copy of the report of Drs. Huff and Steele and read it, they reached their conclusions as to causation from their independent examination of Mr. Liljeblom. That the Seattle doctors were not influenced by Dr. Steele's conclusions is obvious from the fact that they reached an opposite conclusion. Since the written opinion of Dr. Steele was not relied upon by the examining doctors as a basis of their opinion relative to the issue, the admission of exhibit No. 1 into evidence cannot be sustained upon the basis of this contention.

■ Nor is there any merit in the contention that exhibit No. 1 is admissible because Dr. Huff referred to it to refresh his memory as to the facts and his participation in the examination. This is not grounds for admitting the portion of the report in which he did not concur or participate, and which was not used to refresh his memory.

■ Proof of the cause of decedent's injury was the most vital issue in respondent's case. Dr. Steele's former testimony was known to respondent. She did not elect to call him as a witness. For the reasons stated, it was prejudicial error to admit into evidence exhibit No. 1, which contained the opinion of Dr. Steele as to the cause of the injury.

Two points are discussed in the dissenting opinion which were not raised either in the trial court or by counsel on appeal.

■ (1) The dissent states, in effect, that evidence which is hearsay and, therefore, inadmissible under established rules of evidence, should be admitted because of RCW 51.52.115 which provides, in part, as follows:

" . . . The proceedings in every such appeal shall be informal and summary, but full opportunity to be heard shall be had before judgment is pronounced. . . ."

We do not agree. RCW 51.52.140 provides:

"Except as otherwise provided in this chapter, the practice in civil cases shall apply to appeals prescribed in this chapter. . . ."

RCW 51.52.020 grants to the Board of Industrial Insurance Appeals the power to make its own procedural rules. Rules of Procedure 5.10 (d) of the Board of Industrial Insurance Appeals provides:

"The officer presiding at the hearing will on objection or on his own motion exclude all irrelevant or unduly repetitious evidence. In ruling upon objections to the competency of evidence and in disposing of appeals from such rulings, due account will be taken of the requirement that hearings be informal, in the application of the rules applicable in the superior courts of this state."

This rule recognizes the statutory mandate requiring informality in the conduct of the board's business. However, it neither expressly nor by implication suspends the application of superior court rules on evidence.

Our reading of the Workmen's Compensation Act, and the rules which the board has promulgated pursuant to it, leads us to the conclusion that it was not the intent of the legislature to free the board completely of "legalistic rules," nor has the board itself so construed the act. In the instant case, the board, in the application of its own rules, properly rejected the exhibit.

(2) As we interpret the dissent and the cases cited therein, it is contended that Dr. Steele was an agent of the department and, as such, the department was bound by the statements of professional opinion which he made as a result of his employment. We do not agree for two reasons:

(a) An agent's statement, to be admissible in evidence against his principal, must be a statement of fact and not the expression of an opinion. *Albertson v. Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 242 Minn. 50, 64 N. W. (2d) 175, 42 A. L. R. (2d) 1044 (1954); *Borden v. General Ins. Co.*, 157 Neb. 98, 59 N. W. (2d) 141 (1953); *Romo v. San Antonio Transit Co.*, (Tex. Civ. App.) 236 S. W. (2d) 205 (1951); *Briggs v. John Yeon Co.*, 168 Ore. 239, 122 P. (2d) 444 (1942); *Edwards v. Maryland Motor Car Ins. Co.*, 204 App. Div. 174, 197 N. Y. S. 460 (1922); 31 C. J. S. 1113, § 343. The only portion of the report to which appellant

objected contained Dr. Steele's opinion. The opinion evidence was not admissible.

(b)　Dr. Steele was not an agent of the department. In *Losli v. Foster,* 37 Wn. (2d) 220, 234, 222 P. (2d) 824 (1950), we stated the distinction between an independent contractor and an agent as follows:

" 'An independent contractor may be distinguished from an agent in that he is a person who contracts with another to do something for him, but who is not controlled or subject to the control of the other in the performance of such contract, but only as to the result. A principal, on the other hand, has the right to control the conduct of an agent with respect to matters intrusted to him.' 2 Am. Jur. 17, Agency, § 8."

In the instant case, Dr. Steele was not subject to the control of the department. He was to examine the claimant in such manner as he saw fit and report "as to the result" of his examination. In the performance of this service for the department, the doctor was an independent contractor.

In *Leschner v. Department of Labor & Industries,* 27 Wn. (2d) 911, 185 P. (2d) 113 (1947), we stated that a doctor was not an agent of the department for the purpose of filing workmen's claims. The analysis contained in that opinion is here applicable. We there stated that the crucial inquiry with regard to a determination of whether a person is an agent of another is whether he has the power to alter the legal relations between his alleged principal and third persons. In the cited case, we stated that in the Workmen's Compensation Act there is no grant of authority to doctors to alter the legal relations between the state and claimants.

The act does not empower examining doctors to alter the legal relations between the state and claimants sent to them for examination. The fact that the department employed more than one examining doctor establishes that it did not intend to be bound by the conclusion of any one doctor, but that the function of the examining doctors was merely to advise and assist the department in its determinations.

We conclude that Dr. Steele, not being an agent of the department, could not bind the department by his conclusions. The admission into evidence of his opinion, contained in the report, cannot be sustained upon the basis that it is an admission of a party opponent.

The judgment is reversed, and the cause remanded with instructions to grant a new trial. Costs will abide the final result of this action.

WEAVER, C. J., MALLERY, HILL, and DONWORTH, JJ., concur.

FOSTER, J. (dissenting)—The court decides that a new trial must be granted because the report of a special medical examiner chosen by the department was admitted in evidence when it was offered by the widow of the deceased workman. To this conclusion I must dissent.

On April 10, 1955, respondent's husband filed a report of an industrial accident occurring on March 2, 1955. Approximately four months after the accident, the department selected two physicians to examine the injured workman and to report whether the accident caused the disability or not. While making a joint report, the two physicians disagreed as to the relationship of the injury and the disability. The eminent heart specialist, Dr. John F. Steele of Tacoma, advised the department in writing that he considered the injury to be the proximate cause of the disability. The workman's claim was rejected because the department held his condition was not the result of his injury. The claimant promptly appealed, but at the time of his death, eighteen months after the injury, the appeal board had not decided his case.

A subsequent appeal was taken by his widow from the order denying her claim for a pension.

At the trial, the widow of the deceased workman offered in evidence the report of the department's medical examiner, which report the court admitted. This court now reverses on that ground.

From the beginning the legislature directed that judicial review of decisions in industrial insurance cases should be

informal and summary. Laws of 1911, chapter 74 § 20, p. 368, provides, in part:

" . . . The proceedings in every such appeal shall be informal and summary, but full opportunity to be heard shall be had before judgment is pronounced. . . . "

That language is presently codified as RCW 51.52.115.

Notwithstanding this mandate, this court now injects all of the technicalities of the common-law rules of evidence, which is reminiscent of the admonition of the late Judge Bausman writing this court's opinion in *Stertz v. Industrial Ins. Comm.*, 91 Wash. 588, 158 Pac. 256, in which we said:

"By the working class the new legislation was craved from a horror of lawyers and judicial trials. . . . "[2]

The department's authority to order a workman to submit to a physical examination is found in RCW 51.32.110, which, so far as material, is as follows:

"Any workman entitled to receive compensation under this title shall, if requested by the department, submit himself for medical examination, at a time and from time to time, at a place reasonably convenient for the workman and as may be provided by the rules of the department. If the workman refuses to submit to any such examination, or obstructs the same, his rights to monthly payments shall be suspended until such examination has taken place and no compensation shall be payable during or for such period . . . "

The workman submitted because the statute compelled him to do so, and now the court reverses a judgment for

[2]"It was not surprising therefore that the Workmen's Compensation Acts at once became the target for volleys of legal argument, or that miners who were injured by the shot-firing operations carried on in coal mines were held by the House of Lords not to be entitled to any compensation after all. Nor was the argument limited to 'the course of employment'; almost every phrase used in the Acts was scrutinised over and over again by the courts and a massive series of law reports devoted solely to the subject of workmen's compensation was built up over the years to the enrichment of the publishers and the edification of the profession. In numerous instances Parliament intervened in order to contradict the construction which the lawyers had fastened upon the Acts, but in 1946 Parliament lost patience altogether and decided that the only way to make the Acts work at all was to forbid lawyers to have any thing to do with them." Harvey, The Advocate's Devil, chapter 5, p. 75, 88.

his surviving widow because the report of such examination was admitted in evidence when offered by his widow.

Dr. Steele's report to the department was not hearsay, so there is no occasion to consider the exception to the hearsay rule contained in the uniform business records as evidence act. It was made directly to the department by Dr. Steele who had been employed by the department for that specific purpose. It is not necessary, nor is it proper, to have recourse to the uniform business records as evidence act, RCW chapter 5.45, or to decisions construing that act.[3]

The physician's opinion appearing in the hospital chart in *Young v. Liddington,* 50 Wn. (2d) 78, 309 P. (2d) 761, was held incompetent because it was not sufficiently probative to be admissible. Such was the sole reason for exclusion. It was not held that records containing opinions must be excluded. Had that been the decision, I would not have signed it. The question here was completely absent in *Young v. Liddington, supra,* which the court cites as support for its position.

It must be remembered that this state adopted an industrial insurance system rather than a workman's compensation or employer's liability system. Even now, only seven states have a compulsory state monopoly system of industrial insurance. In 1911, Washington was the first state to do so, modeling our statute after the German system. *Stertz v. Industrial Ins. Comm., supra.* A major reason for the choice of industrial insurance rather than the private profit insurance was that the legislature felt that a compulsory state monopoly system would avoid many of the abuses to which a competitive system of com-

---

[3]*Travis Life Ins. Co. v. Rodriguez* (Tex. Civ. App.), 326 S. W. (2d) 256; 38 Tex. L. Rev. 645, Evidence, Admission in Evidence, Records, Hospitals, Diagnosis of Leukemia in Hospital Record Held Admissible Under Texas Business Records Act; 5 Vanderbilt L. Rev. 651, Evidence, Entries in the Regular Course of Business, Test for Extent of Admissibility Under Federal Judicial Code; 37 Cornell L. Q. 290, Evidence, Entries in the Regular Course of Business, Physicians' Letters Describing Patient's Condition; 14 Southwestern L. Jour. 115, Evidence, Hearsay Rule, Admissibility of Hospital Records.

pensation might lead. That philosophy is exemplified in the legislative admonition that appeals are to be informal with an emphasis on substance rather than technicalities.

On court review, it is necessary and proper that the jury should know all of the information upon which the department acted. All of the material should be presented so that the jury can properly evaluate the action taken by the department. This principle of full disclosure permeates the entire industrial insurance procedure.

In *Murray v. Department of Labor & Industries,* 151 Wash. 95, 275 Pac. 66, the first case in this state to deal with industrial insurance appeals under the forerunner of the present scheme, we so stated:

"When the joint board acts upon a claim, it takes into consideration all of the evidence which has been submitted by the claimant. It may also take into consideration the opinion of its chief medical adviser and other officers, and their opinions may not appear in the record. For illustration, assume that the claimant introduces testimony tending to show that he was suffering from diabetes caused by dropping a piece of timber upon his foot. The joint board summarily rejects the claim on the oral advice of its medical officer, and an appeal is taken to the superior court. There the claimant produces the record of the department and the full record of all proceedings and testimony taken before the joint board. . . ."

It is the responsibility of the department, in such proceedings, to see that all the material is presented. The court's opinion, however, misconceives the nature of appeal from a departmental ruling in industrial insurance cases. This is not a strictly adversary proceeding; the common-law rules of evidence do not strictly obtain. The department's responsibility to assure presentation of all material cannot be avoided by use of legalistic rules which the framers of the statute sought to avoid.

In this situation, not only was the evidence properly admitted but, when the events at trial are viewed in their proper light, the further conclusion follows that the widow was entitled to an instruction on the failure of the department to call the physician or to offer his report. For

reasons not disclosed, the department did not offer Dr. Steele's report nor call him as a witness. Under such circumstances, the widow was entitled to an instruction that the reason the department did not call the physician, whom it employed to examine the workman and to advise it respecting the crucial issue, was because his testimony, if produced, would have been unfavorable to the department.

The controlling rule of law is stated in McCormick on Evidence, 533, § 249:

"When it would be natural under the circumstances for a party to call a particular witness, or to take the stand himself as a witness, or voluntarily to produce documents or other objects in his possession as evidence, and he fails to do so, his adversary may use this failure as the basis for invoking an adverse inference. . . ."

That rule of law is applicable; but more than that, the recognition that this is not strictly an adversary proceeding is imperative. The department had the responsibility to disclose all of the material, whether favorable or unfavorable to its position. The department did not make full disclosure. Surely the claimant may properly assert rights to which she is entitled, and which the department has failed to recognize.

Since Dr. Steele was employed by the department for the purpose of examining the workman and advising it as to the relationship of cause and effect between the injury and his then disability, it would have been error to exclude such testimony. The correct rule of law is stated in *Metropolitan Life Ins. Co. v. Moss* (Tex. Civ. App.), 109 S. W. (2d) 1035:

"The statement of a physician acting within the scope of his authority as medical examiner for the company relative to the physical fitness of an applicant for insurance is admissible in evidence. Clarkston v. Metropolitan Life Ins. Co., 190 Mo. App. 624, 176 S. W. 437; Rhode v. Metropolitan Life Ins. Co., 129 Mich. 112, 88 N. W. 400; Id., 132 Mich. 503, 93 N. W. 1076; Perry v. John Hancock Mutual Life Ins. Co., 143 Mich. 290, 106 N. W. 860; Holloman v. Life Ins. Co., 12 Fed. Cas. 383, No. 6623; Mutual Benefit Life Insurance Co. v. Cannon, 48 Ind. 264."

Professor McCormick, as a result of his research, stated the rule as follows:

"Accordingly, well-reasoned modern decisions have admitted in accident cases the written reports of doctors of their findings from an examination of the injured party, when it appears that it is the doctor's professional routine or duty to make such report. . . ." McCormick on Evidence, 603, 604, § 287.

Nor can I agree that rules of the Board of Industrial Insurance Appeals can be resorted to unless proved the same as other facts must be proved.

In *Larson v. Department of Labor & Industries,* 174 Wash. 618, 25 P. (2d) 1040, this court held:

"Appellant relies, first, on rule XIII of the general rules of the superior court [1 Rem. Rev. Stat., p. 162]. The rule, as set out in appellant's brief, reads as follows:

" 'Unless an emergency is shown to exist, the court will not sign findings of fact and conclusions of law until the defeated party or parties have had three days' notice of the time and place of the submission thereof, and shall have been served with copies of the proposed findings and conclusions.'

"The rule is not made a part of the statement of facts, is not contained in the record, and comes before us only by recital in appellant's brief. An appellate court will not take cognizance of the rules of the court below when they are not in the record, in the absence of a statute requiring it to do so. 15 R. C. L. p. 1079, § 17; Nichols' Applied Evidence, Vol. 4, p. 4086; Bancroft Code Practice and Remedies, Vol. 1, § 665, p. 982; *Bowen v. Webb,* 34 Mont. 61, 85 Pac. 739; *Middle States Oil Corp. v. Tanner-Jones Drilling Co.,* 73 Mont. 180, 235 Pac. 770; *Stivers v. Byrkett,* 56 Ore. 565, 108 Pac. 1014, 109 Pac. 386; *Peters v. Walker,* 37 Idaho 195, 215 Pac. 845; *Gammon v. Ealey & Thompson,* 97 Cal. App. 452, 275 Pac. 1005. We have no statute in this state requiring this court to take judicial notice of the rules of the superior courts. We can not, therefore, take judicial notice of the rule."

The sole issue is the admissibility in evidence of the report of the medical examiner employed by the appellant, and no question arises as to whether the appellant is bound by such report. The fact that it was admitted for one rea-

son does not preclude this court from considering other reasons for determining admissibility whether such reasons were considered by the trial court or not. The issue is the admissibility of the report, not the reason assigned by the trial court or by counsel offering it. *Kirkpatrick v. Department of Labor & Industries,* 48 Wn. (2d) 51, 290 P. (2d) 979; *Bruce v. Bruce,* 48 Wn. (2d) 635, 296 P. (2d) 310; *Radach v. Prior,* 48 Wn. (2d) 901, 297 P. (2d) 605.

I would affirm the judgment.

ROSELLINI, J. concurs with FOSTER, J.

FINLEY and HUNTER, JJ. (dissenting)—We also would affirm the judgment.

