[No. 43474.   En Banc.   May 8, 1975]

KENNETH YOUNG et al, *Petitioners*, v. GROUP HEALTH COOPERATIVE OF PUGET SOUND et al, *Respondents*.

*Schroeter, Jackson, Goldmark & Bender, P.S.,* by *John Goldmark,* for petitioners.

*Williams, Lanza, Kastner & Gibbs,* by *Henry E. Kastner,* for respondents.

HUNTER, J.—The plaintiffs (petitioners), Kenneth Young and Christopher Young, as a marital community, and Christopher Young as guardian ad litem for her son, Dylan Young, seek review of a decision by the Court of Appeals which affirmed a judgment entered on a jury verdict in favor of the defendants (respondents), Group Health Cooperative of Puget Sound (hereinafter referred to as Group Health), and Doctor Alfred J. Magar, in a medical malpractice suit.

At 2 a.m., on January 30, 1970, Christopher Young was admitted into the Group Health Hospital in anticipation of the birth of her first child. At that time she was experiencing normal labor. At 7 a.m., a nurse reported to Dr. Kenneth Malan, the obstetrician in charge of the labor facilities, that the baby was in a breech position—coming feet first as opposed to the normal head first position. X rays were ordered and Mr. Young was informed that there was ample room in Mrs. Young's pelvis for a vaginal delivery. Dr. Malan did not inform the Youngs that the baby's head was severely bent backwards toward the spine, a factor which complicates vaginal delivery and poses a risk to the fetus. The record is in dispute as to whether Dr. Malan actually detected this condition. Dr. Malan testified that he could not specifically remember perceiving the position of the fetus' head, yet, relying on his normal practice, the doctor was confident that he had.

At 8 a.m., Dr. Alfred J. Magar, also an employee of Group Health, and Mrs. Young's chosen obstetrician, came on duty and consulted with Dr. Malan. While neither Dr. Malan nor Dr. Magar could remember discussing the hy-

334

perextension of the baby's head from "exact memory," both stated they were sure that the position of the neck was analyzed. However, at no time was this condition ever made known to the parents.

At 8:50 a.m., Dr. Magar, acting without Dr. Malan, delivered Dylan Young in a vaginal delivery, not by Caesarean section, which, according to the plaintiffs' expert witnesses, would have been proper under the circumstances. Within several months of the birth, it was discovered that Dylan was a partial quadriplegic, with virtually no movement or feeling below the shoulders.

The plaintiffs sued Group Health as principal for its agents, Dr. Malan and Dr. Magar, and Dr. Magar individually, for malpractice, claiming that Dylan's injuries were caused by the negligence of either (1) the failure of Dr. Malan to discover Dylan's condition, or (2) Dr. Malan's failure to inform the Youngs of the condition in order to obtain their consent to a vaginal delivery instead of a Caesarean section, or (3) if Dr. Malan did discover the condition, his failure to inform Dr. Magar of it, or (4) if Dr. Magar had been informed of the condition, his failure to use special birth techniques and to inform the Youngs of the risks inherent in a vaginal delivery and alternate methods available under the circumstances. The jury returned a verdict in favor of the defendants, from which the plaintiffs bring this appeal.

The plaintiffs' first assignment of error goes to the trial court's exclusion of certain statements made by Dr. Malan during the taking of his deposition, which pertained to the issue of informed consent. At trial, the plaintiffs' counsel questioned Dr. Malan as to whether or not the Youngs were "entitled . . . to be informed of the additional risks created by the position [of the baby's head] shown in the x ray" in order for them to give an informed consent to a vaginal delivery. An objection was made on the grounds that the question as asked called for a legal conclusion. The objection was sustained and the question was rephrased in terms of whether the various facts "should have been com-

municated to the parents" in light of his medical opinion. Dr. Malan responded unequivocally in the negative. Plaintiffs' counsel then attempted to impeach the witness by offering the following excerpt from Dr. Malan's testimony contained in his deposition:

Q. Now my question is, were not Mr. and Mrs. Young entitled to have these facts [Dylan's condition and the risks they posed to a vaginal birth] presented to them and be consulted on what was to be done. A. Yes, of course. Now you said were they entitled to, of course they were *entitled to know what procedure was planned but we do not feel they should nor do we expect them to make a medical decision.*

(Italics ours.) The italicized portion of the above was added by Dr. Malan subsequent to the taking of the deposition. The defendants objected to the introduction of the statement on the same basis as before, and again the court sustained the objection. The defendants contend that this was proper, arguing that a witness cannot be impeached with a prior inconsistent opinion. Under the facts of this case, we disagree.

In upholding the judgment of the trial court, the Court of Appeals relied on *Webb v. Seattle*, 22 Wn.2d 596, 157 P.2d 312, 158 A.L.R. 810 (1945). A close reading of the case lends support to the plaintiffs' position, not the defendants'. In *Webb* we held that a witness who testifies at trial as to facts cannot be impeached by showing a prior inconsistent expression of opinion. However, this rule is clearly inapplicable to an expert witness who gives *opinion* evidence at trial, having previously expressed an inconsistent opinion. Under these circumstances, "all courts will permit impeachment by showing a previous expression by the witness of an inconsistent opinion." E. Cleary, *McCormick's Handbook of the Law of Evidence* § 35, at 69 (2d ed. 1972). *See also People ex rel. Department of Public Works v. Murata,* 161 Cal. App. 2d 369, 326 P. 2d 947 (1958); *Rosenfeld v. Johnson,* 161 So. 2d 703 (Fla. Dist. Ct. App. 1964). Furthermore, we do not believe that the question, as phrased at the deposition, called for a legal conclusion.

Under our opinion in *ZeBarth v. Swedish Hosp. Medical Center*, 81 Wn.2d 12, 499 P.2d 1 (1972), expert medical testimony was required to establish the proper standard of disclosure within the medical profession.[1] Therefore, the words "entitled to know" must be considered within this context. The theory of informed consent is based on the patient's right to know and, when the extent of this right can only be determined through expert medical testimony, the difference between asking a physician what the patient "should know" as opposed to what the patient is "entitled to know" is only a matter of semantics. It is clear, when comparing Dr. Malan's statements in his deposition to his statements at trial, that he interpreted both forms of the question as calling for a medical opinion. On both occasions Dr. Malan's answer covered the same subject matter and involved the same medical considerations, differing only as to his final conclusion. Therefore, we conclude that the question called for a medical opinion from an expert witness fully qualified to render it.

One final ground exists for permitting the use of the deposition for impeachment purposes. If the question did call for a legal opinion, the objection went to the form of the question, and therefore, was waived by failure to object to the taking of the deposition. CR 32(d)(3)(B).

■ We hold the trial court erred in refusing to allow the plaintiffs to impeach Dr. Malan by introducing his prior inconsistent opinion. The prejudicial effect of this error cannot be minimized, and therefore warrants the reversal of the Court of Appeals' decision and the judgment of the trial court. Under *ZeBarth* medical opinions are not only required but, in fact, they go to the heart of the issue of informed consent. Dr. Malan's prior opinion was totally inconsistent with his opinion as expressed to the jury, and its introduction would have substantially discredited him, a

---

[1]This case was brought to trial prior to our decision in *Miller v. Kennedy*, 85 Wn.2d 151, 530 P.2d 334 (1975), which abandoned the *ZeBarth* case in this regard. (*ZeBarth v. Swedish Hosp. Medical Center*, 81 Wn.2d 12, 499 P.2d 1 (1972).)

key witness, especially in light of the fact that he was permitted to testify at length as to his opinions during the trial.

The plaintiffs' second assignment of error goes to the trial court's refusal to admit Dr. Malan's statement against Group Health as an admission against interest. The plaintiffs argue that Dr. Malan was the managing agent for Group Health, and therefore was empowered to speak for his principal. While we have been hesitant to allow the opinions of agents to serve as admissions in a suit brought against the principal, we feel that under the facts of this case it would have been proper.

■ The opinion rule was intended to facilitate more definite answers from witnesses on the stand. "In its modern form it is a rule of preference for the more concrete answers, if the witness can give them, rather than a rule of exclusion." E. Cleary, *McCormick's Handbook of the Law of Evidence* § 264, at 632 (2d ed. 1972). We must not lose sight of the fact that admissions are made out of court without thought to the specific form in which the statement is made. "Accordingly, the prevailing view is that admissions in the form of opinions are competent." E. Cleary, *McCormick's Handbook of the Law of Evidence* § 264, at 632 (2d ed. 1972); 4 Wigmore, *Evidence* § 1053 (3) (Chadbourn rev. 1972). Once one accepts the basis for permitting admissions of a party, which are in the form of opinions to be introduced into evidence, there exists no convincing reason for not doing the same with admissions made by authorized speaking agents. In fact, the modern approach has been to liberalize the standards governing the admissibility of admissions. *See* Model Code of Evidence rule 508(c) (1942); Fed. R. Evidence 801(d)(2). Both of these rules concern themselves with the competency of the declarant to make the statement, not the form in which the statement appears. Therefore, the admissibility of an agent's admissions, which are made in the form of opinions, are dependent upon a finding by the trial court that the declarant is qualified as an expert within the area to which his testi-

mony pertains; that the declarant was a speaking agent for the principal at the time when the statement was made, and that the admission is otherwise necessary, reliable and trustworthy.[2] *Koninklijke Luchtvaart Maatschappij N.V. KLM v. Tuller*, 292 F.2d 775 (D.C. Cir. 1961). It is our considered opinion that Dr. Malan's statement satisfies these requirements. Dr. Malan was qualified to give his medical opinion as to whether the parents should have been informed of the hyperextended position of the fetal neck. At the time that the statement was made, he was employed by the defendant Group Health, and, as a qualified expert with years of experience in the field of obstetrics, his statement was reliable and trustworthy. Finally, under the requirements of *ZeBarth*, as explained earlier in this opinion, medical testimony such as this was definitely necessary. Therefore, since the trial court ruled that Dr. Malan was a speaking agent for Group Health, his statement does constitute an admission against Group Health. Furthermore, since the deponent failed to state a reason for the addition he made to his original statement, that portion which was added subsequent to the taking of the deposition cannot be considered. CR 30(e).

■ The plaintiffs next assign error to the giving of a verdict form which required the jury to either find for the plaintiffs and against both defendants, or for both defendants and against the plaintiffs, thereby prohibiting a finding of negligence against Group Health alone, due to the negligence of Dr. Malan. The plaintiffs contend that the jury could have found that Dr. Malan negligently failed to discover the position of the fetal neck or if he did discover it, that he failed to communicate this fact to Dr. Magar who, therefore, acted innocently in performing a vaginal delivery without obtaining the parents' informed consent. We agree with the plaintiffs that Dr. Malan and Dr. Magar were not independently engaged, and, therefore, that

---

[2]To the extent that it is inconsistent with this opinion, we hereby abandon the dicta in *Liljeblom v. Department of Labor & Indus.*, 57 Wn.2d 136, 356 P.2d 307 (1960).

*Wynne v. Harvey*, 96 Wash. 379, 165 P. 67 (1917), relied upon by the Court of Appeals, is inapposite. However, under the evidence of this case, the trial court did not err in refusing to give the plaintiffs' proposed verdict form which encompassed this theory. Verdict forms, like jury instructions, can encompass only those theories of liability which are supported by substantial evidence. The record in this case contains insufficient evidence to support a verdict finding Group Health liable for the negligent acts of Dr. Malan, while, at the same time, finding Dr. Magar innocent of any negligent conduct. Both Dr. Malan and Dr. Magar testified that they did not believe the parents needed to be informed of the position of the baby's neck since there was "no change in the course of management" and that they felt such information would only serve to increase the mother's anxiety over something which would not alter their management of the delivery anyway. Furthermore, Dr. Magar's testimony refutes the plaintiff's theory that he had been "unknowingly led blindfolded by Dr. Malan into a dangerous situation." The substance of Dr. Magar's testimony was that he was confident he and Dr. Malan discussed the problem; that together they decided the parents need not be informed; and that a vaginal delivery was the best procedure to utilize under the circumstances. Even after the delivery, having viewed the X rays, Dr. Magar stated that he would not have altered his management of the case even if he had seen the actual X rays instead of relying on Dr. Malan's analysis. Without some discrepancy between the two doctors' testimony, or some evidence from which the jury could have found that Dr. Magar was misled to both his and the child's detriment, the verdict form requested by the plaintiffs would not have been proper. Therefore, no error can be premised on this basis.

In addition to the above, the plaintiffs contend that the jury form given by the court was inconsistent with jury instructions Nos. 2 and 3. Since no exception was taken on this ground at trial, we will not consider it for the first time

on appeal. *Nelson v. Mueller*, 85 Wn.2d 234, 533 P.2d 383 (1975).

The plaintiffs' final assignment of error goes to the giving of jury instruction No. 9, which provides in part:

You are instructed that the causal relationship of the alleged negligence of the defendants to the resulting condition of the child must be established by medical testimony beyond speculation and conjecture.

The evidence must be more than that the alleged act of the defendants "might have", "may", "could have", or "possibly did" cause the physical condition.

It must rise to the degree of proof that the resulting condition probably would not have occurred but for the defendants' conduct, to establish a causal relationship.

The plaintiffs contend that the instruction, as worded, raises a detrimental inference as to the quality of their evidence and requires that they meet an additional burden of proof. Furthermore, the plaintiffs argue that proximate cause was adequately covered by other instructions and therefore the giving of a duplicative instruction unduly emphasized this aspect of the case. We find this contention to be without merit.

Proximate cause was a central issue in this case. The expert witnesses called by both sides differed in their opinions as to what actually caused the child's partial quadriplegic condition. Under these circumstances, it is proper to give a special instruction on proximate cause which informs the jury that the causal relationship must be established by evidence which rises above speculation, conjecture, or mere possibility. *Vanderhoff v. Fitzgerald*, 72 Wn.2d 103, 431 P.2d 969 (1967).

In summary, the trial court did not err in the giving of instruction No. 9, or the giving of a verdict form which required the jury to find either in favor of or against both defendants. However, prejudicial error was committed by refusing to allow the plaintiffs to impeach Dr. Malan by showing a prior inconsistent opinion, and secondly, by refusing to admit Dr. Malan's statement as independent evi-

dence on the grounds that it constituted an admission against the interest of Group Health.

Therefore, the opinion of the Court of Appeals and the judgment of the trial court are reversed, and the cause remanded for new trial.

STAFFORD, C.J., FINLEY, ROSELLINI, HAMILTON, WRIGHT, and HOROWITZ, JJ., and JACQUES and RYAN, JJ. Pro Tem., concur.

WRIGHT, J. (concurring)—I have signed the well-written opinion by Justice Hunter. I wish, however, to add this brief concurrence to discuss one feature which was raised, although only briefly discussed.

The question relates to a correction in an answer given during the taking of a deposition. That matter is fully discussed by Justice Hunter in *Seattle-First Nat'l Bank v. Rankin*, 59 Wn.2d 288, 367 P.2d 835 (1962). The conclusion, supported by both text and case authority, is stated at page 294 wherein 4 J. Moore, *Federal Practice* ¶ 30.20 (2d ed.) is quoted. In part, it states:

it is important that the original testimony appear in the deposition as well as the changed testimony, so that if the deposition is used at the trial, a true picture will be presented. . . .

Petition for rehearing denied June 17, 1975.