CLARENCE FORD, *Appellant,* v. DAVID CHAPLIN,
ET AL, *Respondents.*

*David A. Williams,* for appellant.

*Gary R. Eliasen, Merrick, Hofstedt & Lindsey,* and
*Robert R. Hoon,* for respondents.

BAKER, J.—Clarence Ford appeals an adverse judgment
in a medical malpractice suit. Ford contends the trial court
erred by permitting ex parte contact between defense

counsel and his treating physicians and in giving various jury instructions.

Ford was seriously injured while working as a carpet installer when a roll of carpet fell on the heel of his right foot. He was examined and treated by several doctors over a period of years. Several surgeries were performed. Dr. David Chaplin, an orthopedic surgeon, operated on Ford's foot to explore the area of irritation and removed a bone spur. In follow–up visits after the operation, Chaplin noted that Ford continued to experience pain in his ankle.

Because the surgery did not relieve the symptoms, Dr. Chaplin recommended that Ford be retrained for a lighter occupation and that Ford go to a pain clinic. No postoperative X–rays were taken.

When Ford sought further medical assistance, Dr. Gerald Kuwada discovered a fracture in Ford's right foot. Dr. Kuwada performed two surgeries. Still later, Ford consulted Dr. Sig Hansen, an orthopedic surgeon, who performed a triple arthrodesis (bone fusion) on Ford's foot. The operation relieved his pain and left him "feeling like a new man". Dissatisfied with his treatment prior to consulting Dr. Hansen, Ford brought this action for negligence against Dr. Gerald Kuwada, Dr. John Beebe (his original treating physician), and Dr. Chaplin. After settling with Drs. Beebe and Kuwada, Ford proceeded to trial against Dr. Chaplin.

A special verdict form was submitted to the jury. In answer to the first question, "Was there negligence by defendants which was a proximate cause of injury or damage to the plaintiff?", the jury responded, "No".[1] The trial

---

[1]The special verdict form then stated:

"(If your answer is 'no,' do not answer any further questions.)

"QUESTION NO. 2: What is the total amount of the plaintiff's damages?

"ANSWER: $_____

"QUESTION NO. 3: Was there negligence by the plaintiff which was a proximate cause of the injury or damage to the plaintiff?

"ANSWER: _____ (Yes or No)

"(If your answer is 'no,' do not answer any further questions.)

court denied Ford's motion for a new trial, and he filed this appeal.

## I

We first consider whether the trial court erred in permitting ex parte contact between Dr. Chaplin's counsel and some of Ford's physicians who were going to testify for the defense. At defense counsel's request, the trial court permitted the contact in order to prepare the physicians' trial testimony, but ordered that "[c]ounsel for defendants shall not discuss patient confidentialities or privileged matters undisclosed through prior discovery with these former treating physicians."

In *Loudan v. Mhyre*, 110 Wn.2d 675, 756 P.2d 138 (1988), the Supreme Court prohibited defense counsel's ex parte contact with the treating physicians in a wrongful death action. The court expressed concern that an ex parte interview could reveal irrelevant, privileged medical information and further emphasized: "The mere threat that a physician might engage in private interviews with defense counsel would, for some, have a chilling effect on the physician–patient relationship and hinder further treatment." *Loudan*, 110 Wn.2d at 679.

Dr. Chaplin characterizes the ex parte contact between his counsel and Ford's treating physicians as necessary trial preparation of defense witnesses. We do not read *Loudan* to allow room for ex parte contact, even when so characterized. Although the trial court specified limitations on the ex parte contact, the limitations, while laudable, do not eliminate the dangers posed by such contact. Such contact can have a chilling effect on the physician–patient relationship and is prohibited. *Loudan*, 110 Wn.2d at 679. The trial court's order was therefore error.

---

"QUESTION NO. 4: Using 100% as the total combined negligence of the parties which contributed to the injury or damage to the plaintiff, what percentage of such negligence is attributable to the plaintiff?
"ANSWER: ___ % "

■ However, as counsel for Ford conceded at oral argument, it is difficult to conclude that the ex parte contact here had any effect on the outcome of the trial. Apparently, the only ex parte contact which occurred was with Dr. John Burns. At trial, Ford's counsel did not explore the ex parte communication between defense counsel and Dr. Burns, even by way of an offer of proof to preserve the issue for appeal. No deposition of Dr. Burns is in the record, making it impossible to ascertain if his testimony at trial after the ex parte contact differed from any deposition testimony given before such contact. The record does not permit us to determine whether the ex parte contact materially prejudiced plaintiff's case. We must conclude that the ex parte contact, although error, was harmless.

## II

Ford next contends that the trial court's instruction on the causal relationship between his injuries and Dr. Chaplin's actions was unfairly cumulative and a comment on the evidence.

The instruction at issue informed the jury:

> You are instructed that the causal relationship of the alleged negligence of defendant to Mr. Ford must be established by medical testimony beyond speculation and conjecture.
> The evidence must be more than that the alleged act of a defendant "might have," "may," "could have," or "possibly did" cause the physical condition.
> It must rise to the degree of proof that the resulting condition probably would not have occurred but for a defendant's conduct, to establish a causal relationship.

Ford argues that his evidence was not speculative and that the basis of his claim was the failure to discover, rather than causing the fracture. Ford contends that the proximate cause of his injury was not a central issue at trial. However, his second amended complaint for damages included the allegation that Chaplin "surgically fractured a bone" during the surgery he performed. Thus, while proximate cause may not have been the main issue at trial, it was one of Ford's original central issues, and testimony was elicited on the topic.

██ ██ Instructions are sufficient if, when read as a whole, they properly inform the jury of the applicable law, permit each party to argue his theory of the case, and are not misleading. *Tiderman v. Fleetwood Homes,* 102 Wn.2d 334, 684 P.2d 1302, 45 A.L.R. 4th 743 (1984). If the instructions on one point are so repetitious and overlapping that they emphatically favor one party, they deprive the other party of a fair trial. *Brown v. Dahl,* 41 Wn. App. 565, 579, 705 P.2d 781 (1985).

In *Young v. Group Health Coop.,* 85 Wn.2d 332, 340, 534 P.2d 1349 (1975), the court approved the giving of an instruction which included language similar to the instruction given in this case.[2] The *Young* court noted that giving such an instruction was permitted where proximate cause was a central issue and expert witnesses differed in their testimony as to the cause of the condition. *Young,* 85 Wn.2d at 340.

Some subsequent cases have cited *Young* and approved a more limited form of the challenged instruction. In *Bryant v. Department of Labor & Indus.,* 23 Wn. App. 509, 513 n.5, 596 P.2d 291 (1979), the court approved an instruction which stated:

> "Medical testimony must establish the causal relationship between the alleged unusually strenuous emotional exertion and the December 5, 1972 stroke in terms of probability. In other words, medical testimony in terms of possibility, speculation or conjecture is not sufficient.["]

In *Richards v. Overlake Hosp. Med. Ctr.,* 59 Wn. App. 266, 277-78, 796 P.2d 737 (1990), *review denied,* 116 Wn.2d 1014 (1991), a medical malpractice case, this court refused a challenge to the following instruction: "The evidence must rise to the degree of proof that any injury plaintiffs claim . . . probably would not have occurred but for defendants' conduct, to establish a causal relationship." *Richards,* 59 Wn. App. at 277.

When the instructions given in this case are read as a whole, they are not so repetitious as to have deprived Ford

---

[2]We note that the opinion in *Young* does not set forth the entire instruction.

of a fair trial. *Brown v. Dahl, supra.* However, the rather argumentative phraseology of the challenged instruction reads much more like an outmoded advocacy instruction than the neutral format favored in current trial practice. The instruction does not appear to be necessary where proper instructions are given on the issues, standard of care and burden of proof. If such an instruction is given at all, it would be preferable to avoid this style.

## III

■ Ford next contends that the trial court erred in giving a contributory negligence instruction. In *Bertsch v. Brewer,* 97 Wn.2d 83, 91, 640 P.2d 711 (1982), the jury returned a verdict for the defendant in a medical malpractice case and the plaintiff alleged error in the giving of the contributory negligence instruction. The court found the error, if any, harmless, reasoning that:

> The jury found no negligence on Brewer's part and, therefore, never reached the issue of Bertsch's contributory negligence. The instruction and special verdict form used clearly informed the jury that the issue of contributory negligence was not to be considered until an initial conclusion as to Brewer's negligence had been made. Because the jury found no negligence on Brewer's part, they presumably never reached the issue of Bertsch's contributory negligence.

*Bertsch v. Brewer,* 97 Wn.2d at 92.

In this case, we have serious doubts concerning the sufficiency of the evidence to support a contributory negligence instruction. However, the special verdict form set out a series of four questions for the jury to consider. The first question asked if the defendants were negligent. The verdict form clearly stated that if the answer was "no", the jury should not go on to the next three questions dealing with damages, negligence of the plaintiff, and percentage of contributory negligence. As in *Bertsch,* the jury here never needed to reach the issue of contributory negligence and hence any error would be harmless.

Ford's reliance on *Zukowsky v. Brown,* 79 Wn.2d 586, 591, 488 P.2d 269 (1971) is misplaced. In that case, unlike the instant case, the court was unable to determine that the

jury was not influenced by the contributory negligence instruction when it rendered a *general* verdict for defendants.

Finally, Ford contends that the trial court erred in giving a mitigation of damages instruction where there was no evidence that any act of Ford's could have reduced his damages. Any error relating to damages is harmless when the verdict establishes that the defendant is not liable. *Okkerse v. Westgate Mobile Homes, Inc.,* 18 Wn. App. 45, 49, 566 P.2d 944 (1977), *review denied,* 90 Wn.2d 1001 (1978).

The judgment is affirmed.

PEKELIS and FORREST, JJ., concur.