203 P.3d 1066 (2009)
Jerry D. SMITH, as Personal Representative of the Estate of Brenda L. Smith, Deceased, and on Behalf of Jerry D. Smith, Richona Hill, Jeremiah Hill, and the Estate of Brenda L. Smith, Appellant,
v.
ORTHOPEDICS INTERNATIONAL, LIMITED, P.S.; Paul Schwaegler, M.D.; and Swedish Health Services d/b/a Swedish Medical Center/Providence Campus, Respondents.
No. 61226-3-I.
Court of Appeals of Washington, Division 1.
March 23, 2009.
*1067 Thomas Richard Golden, Christopher Lee Otorowski, Bainbridge Island, WA, for Appellant.
John Coleman Graffe Jr., Johnson Graffe Keay Moniz, Mary H. Spillane, William Kastner & Gibbs, Seattle, WA, for Respondents.
GROSSE, J.
¶ 1 Prohibited ex parte contact as described in Loudon v. Mhyre[1] does not apply to transmittal of public documents to an attorney representing a nonparty treating physician. The underlying public policy enunciated in Loudon was to protect the patient's privacy from release of any extraneous medical information not germane to the issue at trial. Here, there was no such risk as no information was sought in return from the physician and the information given to the witness was public information. The trial court is affirmed.

FACTS
¶ 2 This is a medical malpractice, wrongful death and survival action brought by Jerry Smith, the surviving spouse and personal representative of Brenda Smith's estate, against Dr. Paul Schwaegler and his employer, for negligent postoperative care following spinal surgery.[2] Brenda Smith suffered from long-standing back problems which led to her consulting Dr. Schwaegler, an orthopedic surgeon employed by Orthopedics International Limited, P.S. On December 31, 2003, Brenda Smith underwent surgery to reconstruct her spinal column. Dr. Schwaegler performed the surgery along with Dr. Andrew Ting, whose task was to provide access to the lumbar vertebrae.
¶ 3 After the 9.5 hour surgery, Brenda was transferred to recovery where no complications were noted. She was then transferred to the intensive care unit. In the early morning hours of January 2, 2004, a blood clot was discovered in Brenda's aorta. A few hours after the clot's discovery, Dr. Kaj Johansen, a vascular surgeon, removed the clot from Brenda's aorta. Due to continuing postoperative complications, Brenda underwent multiple surgeries, including partial amputation of her left leg. During this time period, she was attended to by multiple doctors including Dr. Schwaegler and Dr. Johansen. In addition to the vascular problems, Brenda contracted methicillin resistant Staphylococcus aureus (MRSA), a serious infection. Brenda was eventually discharged from Swedish Hospital in April 2004. Brenda continued to have complications and was readmitted for MRSA pneumonia, which resulted in her death in March 2005.
¶ 4 During pretrial discovery, Smith deposed Dr. Johansen who was subsequently called as a nonparty fact witness for the defense. Before trial began, a paralegal for the defense sent an e-mail to Rebecca Ringer, Dr. Johansen's attorney, in which she states that defense counsel would like Dr. Johansen to read the attached plaintiff's trial brief. Trial began on November 5, 2007. No motions in limine were made to restrict the witnesses. Smith called Dr. David Cossman as an expert in support of his negligence claim. On November 12, a copy of Dr. Cossman's trial testimony was transmitted to Ringer for Dr. Johansen to review. And on November 13, defense counsel's notes for Dr. Johansen's direct examination were sent to Ringer. On November 14, Dr. Johansen testified and it was then that Smith's counsel learned of these transmissions.
*1068 ¶ 5 Defense counsel moved to strike Dr. Johansen's testimony and for a mistrial. The court held a hearing and denied the motion, finding no Loudon violation or other attorney misconduct, and further, that there was no prejudice to Smith. There was no evidence in the record that Dr. Johansen had ever received defense counsel's notes for his upcoming direct examination. The trial court offered Smith an opportunity to recall Dr. Johansen to cross-examine him and determine exactly which documents he had received. Smith declined to do so. The trial court further fashioned a jury instruction informing the jurors that documents had been given to Dr. Johansen without the knowledge of the plaintiff.
¶ 6 After a two and a half week trial, the jury returned a verdict in favor of the defendants. On appeal, Smith contends that defense counsel had engaged in improper ex parte contact with Dr. Johansenone of Brenda Smith's treating physicians and a defense witnessby providing Dr. Johansen's attorney with a copy of the trial testimony from Smith's vascular expert, plaintiff's trial brief, and an outline of proposed questions.

ANALYSIS
¶ 7 A trial court's denial of motions for mistrial and new trial are reviewed for abuse of discretion, and ultimately, whether the appellants were denied a fair trial.[3] Smith argues that the trial court should have struck Dr. Johansen's testimony because ex parte contacts with a treating physician are prohibited under Loudon v. Mhyre.[4] Essentially, he contends that Loudon established a bright line rule prohibiting all contact and deeming any prohibited contact prejudicial per se. We disagree.
¶ 8 Loudon involved a wrongful death action. There, the Supreme Court upheld the trial court's ruling that prehearing communications between defense counsel and the plaintiff's treating physician were not permitted, despite waiver of the physician-patient privilege, thus limiting defense counsel to formal discovery methods.[5] The Loudon court noted that the potential risk with such contact was that a physician may inadvertently disclose privileged information regarding a medical condition irrelevant to the litigation.[6]
¶ 9 After Loudon, counsel may not interview a plaintiff's nonparty treating physician privately but must instead utilize the statutorily recognized methods of discovery as set forth in the civil rules. Essentially, that is what occurred here. Dr. Johansen was deposed and his testimony at trial tracked the information obtained during that deposition. Without more, the transmittal of public documents to a fact witness who is also a treating physician does not fall within the ambit of Loudon. Indeed, given the public nature of the documents, excluding the notes, we do not see how it can be.
¶ 10 Smith relies on Rowe v. Vaagen Brothers Lumber, Inc.[7] to support his assertion that Loudon bars the ex parte contact in this case. In Rowe, the trial court granted the plaintiff's motion for a new trial because of an excessive number of objectionable questions by defense counsel, ex parte contact with treating physicians prior to their depositions, mistakes in editing one of the depositions, and misrepresentation of evidence during the defense's closing argument.[8] The trial court granted the motion for new trial because of the cumulative impact of the defects noting "`[i]f there were only one or two of these instances of meritorious CR 59 bases present, the court's decision on this motion may well have been different.'"[9] Here, unlike in Rowe, defense counsel did not seek or solicit information from Dr. Johansen or from his attorney. Rather, they sought to *1069 transmit largely public information to which Smith's counsel was already privy.
¶ 11 In Ford v. Chaplin,[10] this court held that for a Loudon violation to necessitate a new trial, there must not only be ex parte contact with the plaintiff's treating physician, but such contact must result in material prejudice to the plaintiff's case. Smith characterizes the three or four transmission e-mails and one or two voice mails to Dr. Johansen's attorney as multiple ex parte contacts. Such a characterization is misleading. The posttrial exhibits clearly indicate that the series of three or four e-mails were transmitted only to Dr. Johansen's attorney. In argument to the court, defense counsel stated they were doing nothing more than keeping Ringer apprised of the testimony and questioning as her client was technically at risk of being sued himself. While the better course of conduct would have been to copy opposing counsel on the e-mails, the transmission of the documents does not constitute a Loudon violation. Furthermore, there is no evidence in the record before us that Dr. Johansen ever received a copy of an outline of defense counsel's proposed questions. Asking Dr. Johansen's attorney to have him review the plaintiff's trial brief and the expert's testimony is not comparable to a Loudon violation.
¶ 12 But even if this court were to determine that such conduct amounted to a technical Loudon violation, there is no showing of prejudice to the plaintiff. There was no surprise in Dr. Johansen's testimony. Smith's counsel argues that the questions posed to Dr. Johansen required multiple objections from them, thus permitting the jury to infer that Smith was trying to hide exculpatory evidence. The trial court found no prejudice. Furthermore, Dr. Johansen's testimony paralleled his deposition and thus the receipt of this information did not "influence" his testimony.
¶ 13 Smith's reliance upon other jurisdictions to support a bright line rule for granting a new trial where ex parte contact occurs is likewise inapposite. In McCool v. Gehret,[11] the defendant physician actually requested that a third party contact a physician witness to dissuade him from testifying. No such malicious intent was shown here.
¶ 14 Smith has failed to make any compelling argument for reversal. The trial court was fair and did not abuse its discretion.
¶ 15 Affirmed.
WE CONCUR: LEACH, and LAU, JJ.
NOTES
[1] 110 Wash.2d 675, 756 P.2d 138 (1988).
[2] Smith also brought a negligence claim against the nurses at Swedish Hospital, which settled before trial.
[3] Aluminum Co. of America v. Aetna Cas. & Sur. Co., 140 Wash.2d 517, 537, 998 P.2d 856 (2000); Kimball v. Otis Elevator Co., 89 Wash.App. 169, 178, 947 P.2d 1275 (1997).
[4] 110 Wash.2d 675, 756 P.2d 138 (1988).
[5] Loudon, 110 Wash.2d at 676, 756 P.2d 138.
[6] Loudon 110 Wash.2d at 680, 756 P.2d 138.
[7] 100 Wash.App. 268, 996 P.2d 1103 (2000).
[8] Rowe, 100 Wash.App. at 273, 996 P.2d 1103.
[9] Rowe, 100 Wash.App. at 274, 996 P.2d 1103.
[10] 61 Wash.App. 896, 812 P.2d 532 (1991).
[11] 657 A.2d 269 (Del.Supr., 1995).