244 P.3d 939 (2010)
Jerry D. SMITH, as Personal Representative of the Estate of Brenda L. Smith, deceased, and on behalf of Jerry D. Smith, Richona Hill, Jeremiah Hill, and The Estate of Brenda L. Smith, Petitioners,
v.
ORTHOPEDICS INTERNATIONAL, LIMITED, P.S.; Paul Schwaegler, M.D.; and Swedish Health Services d/b/a Swedish Medical Center/Providence Campus, Respondents.
No. 83038-0.
Supreme Court of Washington, En Banc.
Argued June 24, 2010.
Decided December 16, 2010.
*941 Thomas Richard Golden, Christopher Lee Otorowski, Otorowski, Johnston, Diamond & Golden, Bainbridge Island, WA, for Petitioners.
John Coleman Graffe Jr., Johnson Graffe Keay Moniz, Mary H. Spillane, Daniel W. Ferm, Williams Kastner & Gibbs, Seattle, WA, for Respondents.
Michael F. Madden, Bennett Bigelow & Leedom P.S., Seattle, WA, amicus counsel for Group Health Cooperative, MultiCare Health System, Physicians Insurance & Washington State Hospital Association.
Stewart Andrew Estes, Keating, Bucklin & McCormack, Inc., P.S., Seattle, WA, amicus counsel for Washington Defense Trial Lawyers.
Bryan Patrick Harnetiaux, David P. Gardner, Spokane, WA, George M. Ahrend, Ahrend Law Firm PLLC, Moses Lake, WA, amicus counsel for Washington State Association for Justice Foundation.
ALEXANDER, J.
¶ 1 This case presents the following questions: (1) whether counsel for defendants in a personal injury action engaged in prohibited ex parte contact with a nonparty treating physician fact witness, per our decision in Loudon v. Mhyre, 110 Wash.2d 675, 756 P.2d 138 (1988), by sending documents to the physician's counsel prior to the physician's testimony at trial, and (2) if that conduct is proscribed by Loudon, is the grant of a new trial the proper remedy for the violation? Although we conclude that the defendants' attorney violated the Loudon prohibition on ex parte contact, we hold that the violation caused no prejudicial effect, and thus, the grant of a new trial was not warranted. We, therefore, affirm the Court of Appeals' decision upholding the trial court's denial of a motion for a new trial.

I
¶ 2 In 2003, Brenda Smith (Brenda) underwent a spine operation performed by Dr. Paul Schwaegler. Shortly after Brenda's surgery, Dr. Kaj Johansen, a vascular surgeon, was consulted about vascular problems Brenda was experiencing in her legs. To deal with these problems, Dr. Johansen performed blood clot removal surgery. After complications arose, he performed fasciotomies[1] on Brenda's legs. The fasciotomies were not successful and, as a result, Brenda underwent multiple repeated surgical procedures, some of which were performed by Dr. Johansen. Brenda's left leg was eventually partially amputated, and she continued to experience problems in her right leg. During her hospitalizations, Brenda contracted methicillin resistant Staphylococcus aureus (MRSA). On March 10, 2005, she died of complications related to the MRSA.
¶ 3 Jerry Smith, Brenda's surviving spouse and the personal representative of Brenda's estate, brought suit on behalf of the estate, himself and his children (collectively Smith) against Dr. Schwaegler and Orthopedics International Limited, P.S. (collectively Orthopedics). The complaint alleged that Orthopedics' negligence was the proximate cause of Brenda's death. The complaint contained the following limited waiver of physician-patient privilege:
[T]he defendants are not to contact any treating physician, past, present, or subsequent, without first notifying counsel for the plaintiff so that she might bring the matter to the attention of the Court and seek appropriate relief, including imposing limitations and restrictions upon any desire or intent by the defendants to contact past or subsequent treating physicians ex parte, pursuant to the rule announced in Loudon *942 v. Mhyre, 110 Wash.2d 675 [756 P.2d 138] (1988).
Clerk's Papers (CP) at 10.
¶ 4 Prior to trial, Orthopedics indicated that it intended to call Dr. Johansen as a fact witness. Smith's counsel then took Dr. Johansen's deposition. During trial, when Smith's counsel asked Dr. Johansen on cross-examination what kind of questions he expected to be asked at trial, he stated, "I thought the questions would be along the lines of those you had asked me in my deposition, and also, if I may look, ... I was sent a thing called a plaintiffs' trial brief." Verbatim Report of Proceedings (VRP) (Nov. 14, 2007) at 103-04 (emphasis added). Smith's counsel responded, "Oh, really. Where did you get that from?" Id. The record reveals that at the time Dr. Johansen presented his testimony, he had with him a file that contained Smith's trial brief, a verbatim report of proceedings of the testimony of Smith's expert, Dr. David Cossman, a letter from his counsel, Rebecca Ringer, and a copy of the transcript of his deposition together with a cover letter from Orthopedics' counsel. The trial judge indicated that she was "concerned about the situation" and indicated that Dr. Johansen should contact his counsel. Id. at 104. The following day, attorney Ringer informed the court and counsel for the parties that Orthopedics' counsel had sent her an e-mail containing the above described documents, together with an outline of questions that had been prepared for direct examination of Dr. Johansen. She said that she transmitted these documents to her client, except for the direct examination outline.
¶ 5 Smith's counsel thereafter requested an evidentiary hearing. In response to the request, the trial court conducted a telephone conference and two hearings at which counsel for all parties participated. At the conclusion of these proceedings, the trial court denied Smith's motion for a full evidentiary hearing. Although the trial court declined to permit Smith to review e-mails that had been sent or received by Dr. Johansen's counsel, it stated that it would permit Smith to (1) reexamine Dr. Johansen and (2) propose a jury instruction stating that Smith was unaware that defense counsel provided Dr. Johansen with Smith's expert's trial testimony. Although Smith's counsel decided not to reexamine Dr. Johansen, he did move for a mistrial and to strike Dr. Johansen's testimony. The trial court denied both motions but instructed the jury that "Dr. Johansen was provided a copy of Dr. Cossman's trial testimony by defense counsel" and Smith's "counsel was unaware of this fact." CP at 209.
¶ 6 At the conclusion of the trial, the jury found for the defendants. Smith then moved for a new trial, contending that the ex parte contact was wrongful and that the appropriate remedy for the transgression was a new trial at which Dr. Johansen's testimony should be excluded because "there's no way to unring the bell." VRP (Dec. 19, 2007) at 12. The trial court denied the motion.
¶ 7 Smith appealed to Division One of the Court of Appeals. The Court of Appeals affirmed the trial court's denial of the motion for a new trial, holding that "the transmittal of public documents to a fact witness who is also a treating physician does not fall within the ambit of Loudon .... given the public nature of the documents." Smith v. Orthopedics Int'l, Ltd., 149 Wash.App. 337, 342, 203 P.3d 1066 (2009). The Court of Appeals added that even if there was a Loudon violation, Smith failed to show prejudice because Dr. Johansen's trial testimony paralleled his deposition, evidencing the fact that the documents did not "`influence'" his testimony. Id. at 343, 203 P.3d 1066. Smith then petitioned this court for review of that decision, and we granted the petition. Smith v. Orthopedics Int'l, Ltd., 166 Wash.2d 1024, 217 P.3d 337 (2009).

II
¶ 8 We review orders granting or denying a new trial for abuse of discretion. Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wash.2d 517, 537, 998 P.2d 856 (2000). If, however, the trial court's reasons are based on issues of law, our review is de novo. Adkins v. Aluminum Co. of Am., 110 Wash.2d 128, 750 P.2d 1257 (1988).

III

A
¶ 9 In Loudon, we established the rule that in a personal injury action, "defense *943 counsel may not engage in ex parte contacts with a plaintiff's physicians." Loudon, 110 Wash.2d at 682, 756 P.2d 138. Underlying our decision was a concern for protecting the physician-patient privilege. Consistent with that notion, we determined that a plaintiff's waiver of the privilege does not authorize ex parte contact with a plaintiff's nonparty treating physician. In limiting contact between defense counsel and a plaintiff's nonparty treating physicians to the formal discovery methods provided by court rule, we indicated that "the burden placed on defendants by having to use formal discovery is outweighed by the problems inherent in ex parte contact." Id. at 677, 756 P.2d 138. We rejected the argument that requiring defense counsel to utilize formal discovery when communicating with a nonparty treating physician unfairly adds to the cost of litigation and "gives plaintiffs a tactical advantage by enabling them to monitor the defendants' case preparation." Id.
¶ 10 On the issue of whether the Loudon rule was violated here, we begin our analysis by addressing the argument advanced by Smith and amicus curiae Washington State Association for Justice Foundation (WSAJ) to the effect that Loudon established a bright-line rule prohibiting all ex parte contact with nonparty treating physicians. Pet. for Review at 11-12; Br. of Amicus WSAJ at 13. Orthopedics has responded to this assertion by suggesting that Loudon prohibits only ex parte interviews, not ex parte contacts. It contends that the "policy concerns that led the Loudon court to prohibit ex parte interviews of treating physiciansprotecting against inadvertent disclosure by the physician, in an informal setting, of irrelevant health care informationare not implicated in a situation where the only flow is of public information to the physician." Answer to Pet. for Review at 19.
¶ 11 Orthopedics does not accurately characterize our holding. While it is correct in noting that in a portion of the opinion, we focused on the dangers inherent in permitting ex parte interviews, we went on to unequivocally state that "defense counsel may not engage in ex parte contacts with a plaintiff's physicians." Loudon, 110 Wash.2d at 682, 756 P.2d 138 (emphasis added). Moreover, we have indicated in subsequent cases that Loudon generally prohibits such ex parte contact and communications. See Holbrook v. Weyerhaeuser Co., 118 Wash.2d 306, 309, 822 P.2d 271 (1992) (explaining that Loudon frames the ex parte issue as whether "`defense counsel in a personal injury action may communicate ex parte with the plaintiff's treating physicians when the plaintiff has waived the physician-patient privilege'" (emphasis added) (quoting Loudon, 110 Wash.2d 675-76, 756 P.2d 138)); Carson v. Fine, 123 Wash.2d 206, 227, 867 P.2d 610 (1994) (discussing Loudon in terms of prohibiting defense counsel from communicating with or contacting a plaintiff's treating physician). We conclude that the prohibition on ex parte contact, which we set forth in Loudon, is broad and not confined to merely limiting interviews by defense counsel with a plaintiff's treating physician.
¶ 12 Orthopedics next contends that transmitting the documents to Dr. Johansen's counsel did not amount to ex parte contact because it was "communication between lawyers acting as lawyers." Answer to Pet. for Review at 13. To determine whether defense counsel is permitted to indirectly contact a nonparty treating physician through the physician's counsel, we again turn to the policy concerns underlying our decision in Loudon. One concern was that "ex parte interview[s] ... may result in disclosure of irrelevant, privileged medical information," and the harm from such disclosure cannot be fully remedied by court sanctions. Loudon, 110 Wash.2d at 678, 756 P.2d 138. We also noted that "[t]he mere threat that a physician might engage in private interviews with defense counsel would, for some, have a chilling effect on the physician-patient relationship and hinder further treatment." Id. at 679, 756 P.2d 138. Additionally, we observed that "a physician has an interest in avoiding inadvertent wrongful disclosures during ex parte interviews" as a cause of action may lie against a physician for such disclosures. Id. at 680, 756 P.2d 138 (citing Smith v. Driscoll, 94 Wash. 441, 442, 162 P. 572 (1917) (dictum)). Requiring parties to use formal discovery processes when contacting nonparty treating physicians, we said, would not be *944 overly burdensome because "[d]efendants could still reach relevant medical records; cost and scheduling problems of depositions could be minimized by using depositions pursuant to CR 31; plaintiff's counsel might agree to an informal interview with both counsel present; and the purpose behind the discovery rulesto prevent surprise at trial was maintained." Holbrook, 118 Wash.2d at 310, 822 P.2d 271 (citing Loudon, 110 Wash.2d at 680, 756 P.2d 138).
¶ 13 As we have indicated above, the fundamental purpose of the Loudon rule is to protect the physician-patient privilege and to that end, we emphasized the importance of protecting the sanctity of that relationship, saying, "The relationship between physician and patient is `a fiduciary one of the highest degree ... involv[ing] every element of trust, confidence and good faith.'" Loudon, 110 Wash.2d at 679, 756 P.2d 138 (alterations in original) (quoting Lockett v. Goodill, 71 Wash.2d 654, 656, 430 P.2d 589 (1967)). The purpose of the physician-patient privilege, set forth in RCW 5.60.060(4), is twofold: (1) to "surround patient-physician communications with a `cloak of confidentiality' to promote proper treatment by facilitating full disclosure of information" and (2) "to protect the patient from embarrassment or scandal which may result from revelation of intimate details of medical treatment." Carson, 123 Wash.2d at 213, 867 P.2d 610 (quoting Dep't of Soc. & Health Servs. v. Latta, 92 Wash.2d 812, 819, 601 P.2d 520 (1979)). Here, Smith's counsel was not notified of the ex parte contact with one of Brenda's treating physicians and therefore had no way to monitor or review the exchange. That very risk of disclosure of intimate detail without the knowledge of Smith's counsel was a risk we intended to minimize when we adopted the Loudon rule.
¶ 14 Furthermore, permitting contact between defense counsel and a nonparty treating physician outside the formal discovery process undermines the physician's role as a fact witness because during the process the physician would improperly assume a role akin to that of an expert witness for the defense. Fact witness testimony is limited to
those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of rule 702.
ER 701. Although a treating physician fact witness may testify as to both facts and medical opinions in an action for alleged medical negligence, such testimony is limited to "the medical judgments and opinions which were derived from the treatment." Carson, 123 Wash.2d at 216, 867 P.2d 610 (emphasis added) (citing Richbow v. District of Columbia, 600 A.2d 1063, 1069 (D.C.1991)). If a nonparty treating physician receives information from defense counsel prior to testifying as a fact witness, there is an inherent risk that the nonparty treating physician's testimony will to some extent be shaped and influenced by that information.
¶ 15 If there is a risk that a nonparty treating physician testifying as a fact witness might assume the role of a nonretained expert for the defense, it may result in chilling communication between patients and their physicians about privileged medical information. We attempted to limit that possibility in Loudon by restricting contact between defense counsel and nonparty treating physicians. We reaffirm that intent here and apply the rule to prohibit ex parte contact through counsel for the nonparty treating physician. If we were to do otherwise, we would be permitting defense attorneys to accomplish indirectly what they cannot accomplish directly.[2]
*945 ¶ 16 Here, Dr. Johansen's trial testimony evidenced that he had been provided with information pertaining to the trial, which led the judge to comment, "I was listening to [the testimony], thinking [the nonparty treating physician] certainly knows an awful lot about what's happened in the trial. I definitely saw that." VRP (Nov. 15, 2007) at 6. During a subsequent hearing, the trial judge indicated that the tone of the e-mails made it "clear that the lawyers are helping each other out," despite the fact that "there is nothing substantive in [the e-mails] other than the proposed line of questioning." VRP (Nov. 19, 2007) at 74. It seems obvious that even the mere threat that these kinds of communications may occurwhere defense counsel and counsel for the nonparty treating physician are "helping each other out"necessarily "`endanger[s] the trust and faith invested'" in a physician by a patient. Loudon, 110 Wash.2d at 679, 756 P.2d 138 (quoting Petrillo v. Syntex Labs., Inc., 148 Ill. App.3d 581, 595, 102 Ill.Dec. 172, 499 N.E.2d 952 (1986)).
¶ 17 In support of its argument that the contact here did not run afoul of our Loudon decision, Orthopedics asserts that the contact was limited to transmitting public documents. See Smith, 149 Wash.App. at 342, 203 P.3d 1066; Resp'ts' Answer to Amicus WSAJ's Mem. at 3-4. Notably, however, the contact between defense counsel and counsel for Dr. Johansen also included transmission of a nonpublic document, i.e., the outline of questions that defense counsel intended to ask Dr. Johansen on direct examination.[3] Orthopedics concedes this fact. See Answer to Pet. for Review at 13 (stating that defense counsel "sought to transmit largely public information" (emphasis added)). However, even if the documents that were transmitted were entirely public information, we would have the same concerns. We say that because, as a practical matter, a nonparty treating physician would generally not see that information unless it were called to his or her attention. In our view, contact of this kind is within the ambit of what we contemplated in Loudon when we prohibited ex parte contact between defense counsel and nonparty treating physicians.
¶ 18 As noted above, the Court of Appeals affirmed the trial court's denial of Smith's motion for a new trial based, in part, on its conclusion that the rule in Loudon prohibiting ex parte contact does not extend to counsel for a nonparty treating physician or to documents of the nature transmitted here. We disagree with the Court of Appeals on this issue and hold that, under Loudon, Orthopedics' defense counsel engaged in prohibited ex parte contact by transmitting the above described documents to Dr. Johansen's counsel.

B
¶ 19 Because we conclude there was a Loudon violation, we must next discuss the appropriate remedy for this violation. Smith contends that the Court of Appeals "erroneously interposed a `prejudice' analysis in its determination of whether defense counsel violated Loudon" and, in that regard, asserts that the only appropriate remedy is the granting of a new trial and the exclusion of Dr. Johansen's testimony at retrial. Appellant's Answer to Amicus WSAJ's Mem. at 2-3; see Pet. for Review at 15. This position is supported by amicus WSAJ, which asks this court to adopt a per se prejudice rule because a "case-by-case analysis of the consequences of a Loudon violation will not sufficiently deter" misconduct and will "unduly tax the resources of trial courts." Br. of Amicus WSAJ at 19. Orthopedics responds that a new trial should be ordered only if there is actual prejudice because a per se rule would "encourage the plaintiffs' bar to... cry foul about any perceived `contact' *946 defense counsel can be characterized as having had with a treating physician or a treating physician's lawyer." Resp'ts' Answer to Br. of Amicus WSAJ at 3-4. Orthopedics goes on to say there was no prejudice here because the contact was between lawyers and that the nature of the information exchanged was inconsequential to the outcome of the trial. It asks us to conclude that the Loudon rule was created to prevent inadvertent disclosure of private information from the physician to opposing counsel and that the instant nonprejudicial contact between attorneys does not fall within that definition.
¶ 20 Although we did not address the issue of prejudice in Loudon, there have been three Court of Appeals cases that have interpreted Loudon's prohibition of ex parte contact, all of which indicate that a finding of prejudice is central to the determination of a remedy for a Loudon violation. See Smith, 149 Wash.App. at 343, 344, 203 P.3d 1066 (noting that even if a Loudon violation occurred, there was no showing of prejudice to plaintiff, and rejecting Smith's request for the court to adopt "a bright line rule for granting a new trial where ex parte contact occurs"); Rowe v. Vaagen Bros. Lumber, Inc., 100 Wash.App. 268, 278-80, 996 P.2d 1103 (2000) (holding that the mere redaction of certain portions of trial testimony after a Loudon violation was not an effective cure for the violation because it could not cure the inherent prejudice that had already occurred); Ford v. Chaplin, 61 Wash.App. 896, 812 P.2d 532 (1991) (finding a Loudon violation to be harmless error because the record on appeal did not permit the court to determine whether ex parte contact materially prejudiced plaintiff's case).
¶ 21 Like the Court of Appeals in Smith, we are not inclined to presume prejudice in every case where there has been a Loudon violation. We reach that conclusion because there are circumstances where such a violation does not affect the fundamental fairness or outcome of a trial. To require a new trial and exclusion of the nonparty treating physician's testimony as an automatic response to all Loudon violations, in our judgment, would be an unnecessarily harsh result and would not take into consideration the nuances of particular cases.[4] In our view, the more reasonable approach is for the trial court to determine, on the basis of the particular circumstances before it, whether the plaintiff suffered actual prejudice from defense counsel's prohibited ex parte contact with a nonparty treating physician or the physician's counsel and to impose a remedy that is appropriate to the degree of prejudice. In the cases noted above, the Court of Appeals approved that kind of case-specific inquiry, and we agree with that approach.
¶ 22 To establish prejudice, the moving party must show that some actual harm resulted from the violation. See Ferry County v. Concerned Friends, 155 Wash.2d 824, 831, 123 P.3d 102 (2005) (holding that the superior court properly placed the burden of proof of prejudice on the moving party). It makes sense for the moving party to carry the burden of proof on this issue because that party has the greatest interest in perceiving and defending against prohibited ex parte contact between opposing counsel and a nonparty treating physician. See Rowe, 100 Wash.App. at 280, 996 P.2d 1103 (explaining that a prejudice inquiry was conducted due to plaintiff's continued objections to defense counsel's actions). As a practical matter, it would be very difficult for the nonmoving party to prove a lack of prejudice to the moving party.
¶ 23 Our independent review of the record before us leads us to conclude that the Court of Appeals correctly upheld the trial court's determination that Smith was not prejudiced by the actions of Orthopedics' counsel. In reaching this decision, we find ourselves in agreement with the Court of Appeals that Dr. Johansen's deposition paralleled his trial testimony. Thus, there was no showing that the ex parte contact either influenced his *947 testimony or resulted in surprise testimony.[5] Smith's counsel pointed out, to both the trial court and the Court of Appeals, portions of Dr. Johansen's testimony that he claims show that Dr. Johansen was influenced by defense counsel's ex parte contact. This contention, however, is unfounded. As we explained above, a treating physician fact witness may testify as to both facts and medical opinions in an action for alleged medical negligence, so long as the testimony is limited to "`the medical judgments and opinions which were derived from the treatment.'" Carson, 123 Wash.2d at 216, 867 P.2d 610 (emphasis added) (quoting Richbow, 600 A.2d at 1069). Smith does not adequately explain how Dr. Johansen's trial testimony differed from his deposition, nor is it clear what part of Dr. Johansen's testimony regarding his medical judgments and opinions was not derived from treating Brenda. Dr. Johansen's unique position as a treating physician fact witness allows him more latitude to testify about his expertise than what other fact witnesses are permitted.
¶ 24 Because we conclude that Smith suffered no harm from the ex parte contact, we cannot say that the trial court abused its discretion in denying Smith's motion for a new trial.

IV
¶ 25 We hold that although defense counsel for Orthopedics engaged in improper ex parte contact with a nonparty treating physician fact witness, Dr. Johansen, the contact did not prejudice Smith. Accordingly, we affirm the Court of Appeals' decision affirming the trial court's denial of Smith's motion for a new trial.
WE CONCUR: SUSAN OWENS and JAMES M. JOHNSON, Justices.
FAIRHURST, J. (concurring).
¶ 26 I concur in the lead opinion's result affirming the Court of Appeals' decision affirming the trial court's denial of Jerry D. Smith's motion for a new trial. I write separately because, unlike the lead opinion, I do not believe a Loudon v. Mhyre, 110 Wash.2d 675, 676, 756 P.2d 138 (1988), violation occurred when defense counsel for Orthopedics International, Limited, sent documents to a nonparty treating physician through that physician's own attorney.
¶ 27 I share the lead opinion's concern for protecting the physician-patient privilege. However, Loudon established that defense counsel may not engage in ex parte contact with plaintiff's physicians within the context of ex parte interviews. Id. Since Loudon, we have never addressed the meaning of "contact" outside the context of interviews. The lead opinion, by interpreting Loudon as a complete bar on ex parte contact, goes beyond the physician-patient privilege created in RCW 5.60.060(4) and our policy concerns expressed in Loudon.
¶ 28 Expanding Loudon to include all ex parte contacts is contrary to the very statute that created the privilege. The physician-patient privilege was created by RCW 5.60.060(4), which states that "a physician... shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient." (Emphasis added.) Under RCW 5.60.060(4)(b), the physician-patient privilege is waived 90 days after the filing of a personal injury or wrongful death action. Despite this waiver, the Loudon rule reflects our concern of a nonparty treating physician inadvertently disclosing irrelevant confidential information to the defense.
¶ 29 Although in Loudon we held ex parte contact is prohibited, we discussed "contact" only in the context of interviews. First, we were concerned that "an ex parte interview... may result in disclosure of irrelevant, privileged medical information." Id. at 678, 756 P.2d 138 (emphasis added). Next, we stated that "[t]he mere threat that a physician might engage in private interviews with defense counsel would ... have a chilling effect on the physician-patient relationship and hinder further treatment." Id. at 679, 756 P.2d 138 (emphasis added). Lastly, we *948 stated that "a physician has an interest in avoiding inadvertent wrongful disclosures during ex parte interviews." Id. at 680, 756 P.2d 138 (emphasis added).
¶ 30 Relying on Loudon, our subsequent cases discuss ex parte contacts only within the context of ex parte interviews. In Carson v. Fine, 123 Wash.2d 206, 227, 867 P.2d 610 (1994), although we explained that "this court held in Loudon that defense counsel may not communicate ex parte with a plaintiff's treating physicians," we went on to state that "[t]he [Loudon] court feared that ex parte interviews might result in disclosure of irrelevant, privileged information and decided that the plaintiff's interest in avoiding such disclosure could best be protected by allowing plaintiff's counsel to participate in physician interviews." (Emphasis added.) In Holbrook v. Weyerhaeuser Co., 118 Wash.2d 306, 309-10, 822 P.2d 271 (1992), in determining that the Loudon rule should not be extended to appeals before the Department of Labor and Industries, we discussed the policy concerns of ex parte interviews as explained in Loudon.
¶ 31 Loudon prohibits the defense from seeking or soliciting information directly from a nonparty treating physician. The defense has a duty to refrain from engaging in conversation directly with the physician outside the presence of the plaintiff's counsel. This duty stems from the concern that if the defense contacts the physician directly, the physician, who is untrained in the law, may unknowingly respond.
¶ 32 None of that happened in this case. The defense sent documents to the plaintiff's nonparty treating physician through that physician's attorney. The defense did not seek and the physician did not provide any information about Brenda L. Smith. Although defense counsel may have attempted to prepare the physician for trial, the type of contact that took place could not have resulted in inadvertent disclosures by the physician and, thus, Loudon was not violated.
¶ 33 The lead opinion is concerned that Mr. Smith had no way to monitor or review the exchange of the information, but it fails to recognize that contact occurred through the physician's attorney. Because the defense sent the documents to the physician's attorney, the attorney was involved to determine whether the defense was seeking disclosure of information and, if necessary, to prevent disclosure. This is consistent with our third concern in Loudon that a physician has an interest in avoiding inadvertent disclosures to avoid a suit for unauthorized disclosure of privileged information. The physician's attorney, whose primary duty is to act in the physician's best interest, monitored and reviewed the exchange ensuring no Loudon violation would occur.
¶ 34 The lead opinion is also concerned that if a nonparty treating physician received information from defense counsel prior to testifying as a fact witness, there is an inherent risk that the nonparty treating physician's testimony will be shaped and influenced by that information. Lead opinion at 944. There is no indication that occurred in this case, but, even if it did, that concern falls outside the danger of inadvertent disclosures that Loudon addressed. Plaintiff's counsel had the option of asking on cross-examination whether the defense provided copies of documents. Plaintiff's counsel argued this was not a remedy because he did not know what was included in the documents. However, cross-examination still could have undermined the physician's credibility and weight of his testimony if the jury believed he was influenced by the defense.
¶ 35 Finally, as amici curiae Washington State Hospital Association, MultiCare Health System, Group Health Cooperative, and Physicians Insurance A Mutual Company argue, a bright line rule prohibiting ex parte contact is contrary to state law that allows disclosure in some circumstances of health care information without the plaintiff's authorization. In RCW 70.02.050(1)(b), the legislature permits disclosure of health care information without a patient's authorization "[t]o any other person who requires health care information... to provide ... legal ... services to, or other health care operations for or on behalf of the health care provider or health care facility."[1] The lead opinion's creation *949 of a bright line rule prohibiting all ex parte contact results in requiring authorization for disclosures made to health care providers or facilities.
¶ 36 Loudon should be applied consistently with our concerns that ex parte interviews, or the threat of ex parte interviews, would lead to inadvertent disclosures of irrelevant information. Expanding Loudon to prohibit all ex parte contact would be contrary to statute and our concerns expressed in Loudon.
WE CONCUR: BARBARA A. MADSEN, Chief Justice.
C. JOHNSON, J. (concurring/dissenting).
¶ 37 The lead opinion correctly concludes that Loudon prohibits the type of ex parte contact that took place in this case. Loudon v. Mhyre, 110 Wash.2d 675, 756 P.2d 138 (1988). The lead opinion, however, disregards Loudon's clear prohibition on such contacts by failing to couple the violation with any meaningful remedy. The lead opinion compounds this error by creating an almost insurmountable burden for the party that has committed no wrongdoing while providing no clear guidance for determining when prejudice is sufficient to warrant remedial measures.
¶ 38 The lead opinion has blurred Loudon's bright line rule by recognizing that contact is in violation of the rule, while denying the aggrieved party an appropriate remedy. In Loudon, we announced a clear rule with simple application. The rule provides straightforward guidance on what constitutes improper ex parte communication. In Loudon, we rejected reliance upon protective orders in this situation precisely because we did not want to force trial courts to supervise these situations. Loudon, 110 Wash.2d at 679, 756 P.2d 138. We hesitated to require an inquiry into the contact itself, preferring the simpler route of complete prohibition.[1] The lead opinion has muddied that choice by condemning what occurred in this case, but then concluding no remedy be available to the "innocent" party.
¶ 39 In doing so, the lead opinion places an almost insurmountable burden on the party that has done nothing wrong. The lead opinion finds it more appropriate that the innocent party bear the burden of showing some type of prejudice as the party with the greater interest in preventing such contact. Lead opinion at 946. But the plaintiff has the least control over preventing the harm to begin with. In this case, the plaintiff took explicit steps to prevent such contact.[2] There is nothing else the plaintiff could have done, and in these situations, no burden should be placed on them.
*950 ¶ 40 The lead opinion, finally, gives no guidance or standards on how its prejudice inquiry can be satisfied. The contact in this case was initiated by defense counsel's voice message to the treating physician's counsel, informing her that the plaintiff's expert witness had been critical of the treating physician's care. This was followed by a transmission of the transcript of the critical testimony, the plaintiff's trial brief, and defense counsel's proposed line of questioning.[3] This type of contact is prohibited under the Loudon rule, and some remedy should flow from the violation.
¶ 41 We should follow Loudon and hold that when a violation occurs, the remedy is to grant a new trial. The Court of Appeals should be reversed and the case remanded.
WE CONCUR: RICHARD B. SANDERS, TOM CHAMBERS and DEBRA L. STEPHENS, Justices.
NOTES
[1] Dr. Johansen described a fasciotomy as "open[ing] up ... muscle compartments so that swelling [can] occur without killing off the muscle." Verbatim Report of Proceedings (Nov. 14, 2007) at 24-25.
[2] Courts have recognized that, in the past, permitting "ex parte contacts with an adversary's treating physician may have been a valuable tool in the arsenal of savvy counsel. The element of surprise could lead to case altering, if not case dispositive results." Law v. Zuckerman, 307 F.Supp.2d 705, 711 (D.Md.2004) (citing Ngo v. Standard Tools & Equip., Co., 197 F.R.D. 263 (D.Md.2000)); see also State ex rel. Woytus v. Ryan, 776 S.W.2d 389, 395 (Mo. 1989) (acknowledging that ex parte contact in medical malpractice cases between defense counsel and a nonparty treating physician creates risks that are not generally present in other types of personal injury litigation, including the risk of discussing "`the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums, the notion that the treating physician might be the next person to be sued,'" among others (quoting Manion v. N.P.W. Med. Ctr. of N.E. Pa., Inc., 676 F.Supp. 585, 594-95 (M.D.Pa.1987))), abrogated on other grounds by Brandt v. Pelican, 856 S.W.2d 658, 661 (Mo. 1993).
[3] Although it is unclear whether Dr. Johansen actually read the outline, it is undisputed that his counsel received the document from defense counsel.
[4] This is not to say that a Loudon violation could not merit sanctions, exclusion of evidence, or a new trial. If prejudice is caused by a Loudon violation, there are a range of remedies available to the trial court, including sanctioning of defense counsel, striking the nonparty treating physician's testimony, or granting a new trial. Additionally, a jury instruction similar to the one given here may cure any potential prejudice resulting from prohibited ex parte contact.
[5] Smith expressed surprise that defense counsel had transmitted documents to Dr. Johansen's counsel but did not otherwise indicate any surprise from the substance of his testimony. See VRP (Nov. 14, 2007) at 104.
[1] RCW 70.02.050(1) provides in relevant part:

A health care provider or health care facility may disclose health care information about a patient without the patient's authorization to the extent a recipient needs to know the information, if the disclosure is:
(a) To a person who the provider or facility reasonably believes is providing health care to the patient;
(b) To any other person who requires health care information for health care education, or to provide planning, quality assurance, peer review, or administrative, legal, financial, actuarial services to, or other health care operations for or on behalf of the health care provider or health care facility; or for assisting the health care provider or health care facility in the delivery of health care and the health care provider or health care facility reasonably believes that the person:
(i) Will not use or disclose the health care information for any other purpose; and
(ii) Will take appropriate steps to protect the health care information.
[1] Indeed, an inquiry requirement places a greater burden on the trial court as well as the parties. In Ford v. Chaplin, 61 Wash.App. 896, 898-99, 812 P.2d 532 (1991), the trial court wrongly granted defense counsel's request to have ex parte contacts with plaintiff's treating physicians. But, since there was no deposition of the physician in the record, it was impossible to determine whether his testimony was influenced by the contact, and the appellate court was therefore forced to conclude the error was harmless.
[2] The plaintiff's complaint expressly notified the defendant not to contact treating physicians: "[T]he defendants are not to contact any treating physician, past, present, or subsequent, without first notifying counsel for the plaintiff so that she might bring the matter to the attention of the Court and seek appropriate relief, including imposing limitations and restrictions upon any desire or intent by the defendants to contact past or subsequent treating physicians ex parte, pursuant to the rule announced in Loudon v. Mhyre, 110 Wash.2d 675, 756 P.2d 138 (1988)." Compl. at 10.
[3] One can reasonably assume that experienced trial counsel craft questions to witnesses to elicit responses favorable to their theory and arguments to be made at trial. We should conclude that such actions were knowingly and intentionally done to support their trial strategy and theory. The party innocent of wrongful contact should not be required to establish this as prejudice.